STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
CHARLES G. HOWARD, DEFENDANT-APPELLANT.

Argued September 28, 1987—Decided April 19, 1988.

*Kenneth G. Goodman,* Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*J. Grall Robinson,* Deputy Attorney General, argued the cause for respondent (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

This case concerns whether the trial court must inform a defendant of the parole consequences of a sentence to the Adult Diagnostic and Treatment Center (ADTC or Avenel) before accepting a guilty plea pursuant to a plea agreement. We also must determine the standard of proof by which the trial court must determine the propriety of an Avenel sentence. In the Law Division, immediately after being sentenced, defendant moved to withdraw his guilty plea because he had not been informed of the consequences of the plea. The trial court denied the motion, and the Appellate Division affirmed. 213 *N.J.Super.* 587 (1986). We granted certification, 107 *N.J.* 86 (1987), and now reverse the judgment of the Appellate Division. We hold that *Rule* 3:9–2 requires the trial court to inform sex offenders of the possibility and parole consequences of a sentence to Avenel. Furthermore, we find no violation of defendant's right of substantive due process or of the prohibition against cruel and unusual punishment under either the United States or New Jersey constitutions.

I

On February 7, 1985, defendant pled guilty to second-degree sexual assault, contrary to *N.J.S.A.* 2C:14–2c(5). At the plea hearing, defendant admitted that in 1983 he engaged in sexual intercourse with the teenage daughter of the woman with whom he was then involved. Defendant and the victim's mother had lived together from time to time, but were living apart at the time of the offense. At that time, defendant was thirty-five years old, and the victim was between thirteen and sixteen years of age.

In exchange for the defendant's plea, the State dismissed charges of first-degree sexual assault, endangering the welfare of a child, and hindering apprehension. The State also agreed to recommend a maximum sentence of seven years without a period of parole ineligibility.

In accordance with *Rule* 3:9–2, the trial court stated that second-degree sexual assault "carries a penalty as much as ten years imprisonment of which as much as half, five years could be without eligibility for parole, a fine of as much as $100,000 or both." Defendant affirmed that he understood those consequences. After ascertaining that defendant understood that the recommended seven-year sentence could carry a parole ineligibility period of three and one-half years, the trial court concluded that defendant's plea was voluntary and knowing, and accepted the plea. Although the trial court had not previously mentioned the possibility of a sentence to Avenel, immediately after accepting the plea, the court raised that possibility and directed an evaluation of the defendant.

The Avenel staff psychologist who examined the defendant characterized defendant's conduct as repetitive, compulsive behavior necessitating treatment at Avenel. At his own request, defendant was also examined by a private psychiatrist, who concluded that defendant's conduct was "an isolated incident and not evidence of any compulsive behavioral trend." On July 15, 1985, the trial court held a hearing to determine defendant's psychiatric status. The court found that defendant "needs treatment much more than he needs a prison sentence," agreed with the Avenel staff psychologist's determination, and concluded that defendant was a repetitive sex offender.

Ten days later, on July 25, 1985, the trial court sentenced defendant to seven years at Avenel. The court also ordered defendant to pay $25 to the Violent Crimes Compensation Board, and noted that defendant was entitled to credit for the 423 days he had spent in jail. The court then advised defendant that an Avenel patient is released when the parole board is "satisfied that he has benefitted from therapy." That advice referred to the statutory standard for release when "it shall appear to the satisfaction of the State Parole Board, after recommendation by a special classification review board appointed by the commissioner that such person is capable of

making an acceptable social adjustment in the community."
*N.J.S.A.* 2C:47–5.

Defendant immediately protested, and the following colloquy occurred:

THE DEFENDANT: Your Honor, the plea bargain—the reason I made the plea bargain, I understood the agreement was seven years, minimum of 14 months, no extended parole.[1]

THE COURT: Yes?

THE DEFENDANT: That's why I accepted the plea bargain. It was not to exceed beyond 14 months.

THE COURT: I'm not sure I understand you.

THE DEFENDANT: Well, I made Mr. Flynn brought the plea bargain down and he explained to me the agreement on the plea bargain was seven years, a minimum of 14 months, and not extended beyond 14 months. That's what I understood him. That's why I accepted the plea bargain.

If I had known it was going to extend beyond the 14 months, I would have retracted my plea and....

Defense counsel promptly moved to withdraw the plea, but the court rejected the motion, stating: "I'm satisfied that Mr. Howard was telling me the truth when he told me that he was guilty of the crime. So I see no basis for retraction of the plea."

Defendant was sentenced to Avenel, but could not be sent there because of severe overcrowding. Consequently, he was placed on a waiting list and remained in the Monmouth County Jail. While defendant was incarcerated in the county jail, he filed a motion for resentencing or implementation of his sentence. He requested immediate transfer to Avenel or equivalent treatment while in the county jail. In the alternative, defendant requested resentencing to a seven-year State Prison term or to probation with outpatient psychological counseling. On February 14, 1986, the trial judge denied defendant's motion. Two months later, defendant was transferred to Avenel.

Thereafter, on November 19, 1986, the Appellate Division affirmed the imposition of the original sentence. It rejected

---

[1]The earliest possible parole date, assuming good time and work credits, was 16 months, 18 days. Before us, defendant acknowledges his mistake.

defendant's contention that he should be resentenced to prison or allowed to withdraw his plea because of the trial court's failure to inform him of the possibility and implications of the ADTC sentence. 213 *N.J.Super.* at 590–92. The court recognized the difference between an Avenel sentence, in which parole eligibility is indeterminate, and an ordinary sentence to State Prison, in which "the flat parole eligibility term is one-third of the term of imprisonment." *N.J.S.A.* 30:4–123.51; *N.J.A.C.* 10A:71–3.2(c)2. Hence, the Appellate Division noted, if defendant had been sentenced to State Prison, his parole eligibility would have arisen after twenty-eight months. 213 *N.J.Super.* at 590. In addition, the Appellate Division referred to *State v. Kovack*, 91 *N.J.* 476 (1982), in which this Court set aside a plea agreement because of the failure of the trial court to advise the defendant that the sentence included a period of parole ineligibility. The Appellate Division stated:

> We do not consider the *Kovack* rationale to be applicable herein since the Avenel sentence does not involve the loss of any parole opportunities. The Sex Offender Act merely leaves the matter of parole to the discretion of the Parole Board and the special classification review board without specifying the time of eligibility. Parole may be granted earlier than under an ordinary prison term or later, depending on how the authorities exercise their discretion. If anything, defendant's parole opportunities were improved under the Avenel sentence since he became, in effect, immediately eligible for parole, whereas a prison sentence carries a prescribed period of ineligibility. Furthermore, the fact that an inmate under a prison sentence becomes eligible for parole by no means assures that he will receive favorable parole consideration. As in a sentence to Avenel, this is governed by the judgment of the State Parole Board. Moreover, even if an Avenel sentence were interpreted to entail a "loss of parole opportunities," *Kovack, supra*, 91 *N.J.* at 483 this is clearly provided for by statute and does not constitute "a component of the sentence," *ibid.*, comparable to the period of parole ineligibility imposed by the court in *Kovack*. [213 *N.J.Super.* at 591–92.]

In addition, the Appellate Division found that the ADTC sentence did not deprive defendant of liberty to a greater extent than a State Prison sentence, and concluded that the trial court properly applied the preponderance-of-the-evidence standard in determining that the defendant was a sex offender. *Id.* at 592–93. Finally, it found moot defendant's claim that the

trial court should have ordered his immediate transfer to Avenel. *Id.* at 594.

## II

Fundamental to the practice of plea bargaining is the rule that the guilty plea must be made voluntarily, knowingly, and intelligently. *State v. Taylor,* 80 *N.J.* 353, 362 (1979); *see Brady v. United States,* 397 *U.S.* 742, 748, 90 *S.Ct.* 1463, 1469, 25 *L.Ed.*2d 747, 756 (1970) (plea tendered after co-defendant pled guilty and became available to testify against defendant is voluntary). That requirement is specifically imposed by *Rule* 3:9–2, which states:

The court * * * shall not accept [a guilty] plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion * * * that the plea is made voluntarily, not as the result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

The right of the defendant to be informed of the consequences of his plea, however, extends only to those consequences that are "direct," or "penal," but not to those that are "collateral." *State v. Heitzman,* 209 *N.J.Super.* 617, 622 (App. Div.1986), *aff'd o.b.,* 107 *N.J.* 603 (1987). A defendant also has the right not to be "misinformed * * * as to a material element of a plea negotiation, which [he] has relied thereon in entering his plea." *State v. Nichols,* 71 *N.J.* 358, 361 (1976). Defendant's "reasonable expectations," grounded in the terms of the plea agreement, must be fulfilled, *State v. Marzolf,* 79 *N.J.* 167, 183 (1979); *State v. Thomas,* 61 *N.J.* 314, 321 (1972), and on pleading, a defendant has a right to demand from the State performance of the plea agreement, *Santobello v. New York,* 404 *U.S.* 257, 262, 92 *S.Ct.* 495, 499, 30 *L.Ed.*2d 427, 433 (1971). When the State fails to abide by the terms of the bargain, the remedy is either to vacate the plea and permit defendant to plead anew or to require the State to take whatever steps are necessary to carry out the agreement. *Thomas, supra,* 61 *N.J.* at 323–24.

██ To assure that a defendant understands the consequences of his or her plea, a trial court must ascertain that a pleading defendant is aware of any loss of parole opportunities that are part of the sentence. *Kovack, supra,* 91 *N.J.* at 483. In *Kovack,* the defendant pled guilty to aggravated sexual assault. Defense counsel, who had previously reviewed the terms of the plea agreement with defendant, interrogated defendant about his understanding of the agreement. *Id.* at 480–81. Defendant acknowledged that his earliest date for parole eligibility would be in one year and nine months, and that the latest date would be approximately two-and-one-half years. *Id.* at 481. Although neither the court nor counsel advised defendant of the possibility of parole ineligibility, defendant was sentenced to a four-year parole ineligibility period. In setting aside the agreement, we held that the court must be satisfied that the defendant understands the possibility that the sentence may include a period of parole ineligibility. *Id.* at 484. We rejected defendant's contention that he should have received specific performance of his plea agreement, noting that neither the State nor a defendant can bind the sentencing judge in a plea agreement. *Ibid.* (citing *State v. Davis,* 175 *N.J.Super.* 130, 140 (App.Div.), certif. den., 85 *N.J.* 136 (1980)). Sentencing remains a judicial function, and a sentencing court, notwithstanding the agreement of the parties, may refuse to accept any of the terms and conditions of a plea agreement. *Id.* at 485.

██ To vacate the plea, defendant must show not only that he was misinformed of the terms of the agreement or that the sentence violated his reasonable expectations, but also that he is prejudiced by enforcement of the agreement. *Taylor, supra,* 80 *N.J.* at 363. Hence, the plea will not be vacated if knowledge of the consequences would not have made any difference in the defendant's decision to plead. *Ibid.* Consistent with the strong interests of the State in the finality of a guilty plea, *id.* at 362, the standard for withdrawal of a plea is more stringent after sentencing, *id.* at 359–60. At sentencing, the plea may be

withdrawn in "the interests of justice," *ibid.*, but after sentencing, only "to correct a manifest injustice," *R.* 3:21–1.

## III

The Appellate Division rejected defendant's claim that the trial court should have informed him of the parole eligibility implications of an Avenel sentence. In rejecting that claim, the Appellate Division concluded that Avenel defendants suffer no loss of parole opportunities, 213 *N.J.Super.* at 591–92, and that they actually enjoy enhanced parole opportunities because they become immediately eligible for parole, subject only to a determination of their capability of "making an acceptable social adjustment in the community," *N.J.S.A.* 2C:47–5; *id.* at 592.

The Public Defender has supplemented the record with information indicating that Avenel inmates are much more likely than State Prison inmates to serve the entire term to which they are sentenced. In addition, both the average and median lengths of stay for Avenel prisoners are significantly longer than the stays of State Prison inmates. To a defendant the critical aspect of a guilty plea is the period of possible confinement. *Kovack, supra,* 91 *N.J.* at 483 (citing *Berry v. United States,* 412 *F.*2d 189, 192 (3rd Cir.1969)). The trial court's failure to inform a defendant of the possibility of confinement at Avenel, subject to a parole determination radically different from that applicable to other prisoners, can result in manifest injustice, justifying vacating the plea. *See Taylor, supra,* 80 *N.J.* at 365 (where it appears that there is a significant possibility that the misinformation imparted to the defendant could directly induce him to enter the plea, he should be allowed to withdraw from the bargain). Defendant was not advised of the possibility of the imposition of an Avenel sentence with its unique parole-eligibility standard. His guilty plea, however, was obviously based on a careful calculation of the amount of time that he would be imprisoned. A sentence to Avenel affects that calculation because the period of parole

ineligibility is different for Avenel prisoners. Consistent with
that premise, defendant's immediate protest bespeaks the mate-
riality of the omitted information to his decision to enter the
plea agreement. *Ibid.*

■ As indicated, *Rule* 3:9-2 requires the court to determine
whether a defendant clearly understands "the nature of the
charge and the consequences of the plea." For a sex offender,
those consequences include the possibility that the defendant
may serve his sentence at Avenel subject to a period of parole
eligibility radically different from that accorded State Prison
inmates. In the future, trial courts should satisfy themselves
that the defendant understands the possibility of the imposition
of an Avenel sentence and the effect that such a sentence will
have on the defendant's parole eligibility. In addition to stating
the minimum and maximum terms of the offense, the court
should advise the defendant of the standard for parole eligibili-
ty with an ADTC sentence.

In devising an appropriate remedy, we are aware that defend-
ant was originally incarcerated in the Monmouth County jail,
and for the past two years has been confined to Avenel. At the
plea hearing on February 7, 1985, the trial court informed the
defendant that the maximum sentence was ten years with five
years of parole ineligibility, and that the recommended sentence
was seven years with a possibility of three-and-one-half years
of parole ineligibility. Thus, defendant was aware of the possi-
bility of a period of parole ineligibility that has not yet expired.
Furthermore, the State Parole Board has not yet determined
that defendant "is capable of making an acceptable social
adjustment in the community." *N.J.S.A.* 2C:47-5. Hence, we
are confronted with a case involving a convicted, repetitive sex
offender who was not properly advised of the parole eligibility
consequences of pleading guilty to second-degree sexual as-
sault. On balance, we believe the appropriate remedy is to
permit defendant to accept the plea bargain and the sentence
imposed by the trial court or to withdraw his plea, subject to

reinstatement of the dismissed charges, and proceed to trial or to renegotiate the plea agreement. *Kovack, supra*, 91 *N.J.* at 485.

## IV

The provisions of the Code of Criminal Justice relating to sex offenders, *N.J.S.A.* 2C:47–1 to –7, empower the sentencing court to impose a sentence at Avenel "[i]f the [psychological] examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior * * *," *N.J.S.A.* 2C:47–3a. The statute, however, does not specify the standard of proof for making this determination. Defendant claims that due process demands that the court be satisfied of the propriety of a sentence at Avenel beyond a reasonable doubt, or at least by clear and convincing evidence. The Appellate Division rejected that contention and found that due process was satisfied by the preponderance-of-the-evidence standard. 213 *N.J.Super.* at 593. We agree, albeit for reasons different from those of the Appellate Division.

Under the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 64–8 (the Code), the general rule is that the burden of proof is on the party "whose interest or contention will be furthered if the finding should be made * * *," *N.J.S.A.* 2C:1–13d(1). That provision, which applies to sentencing factors, leaves to the courts the determination of the appropriate standard. *II Commentary: The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission* 37 (1971). Thus, the Legislature has left it to us to decide whether a standard higher than a preponderance of the evidence shall apply to the determination that a defendant is a repetitive sex offender. That determination will not be made until after defendant has been found guilty beyond a reasonable doubt that he or she is a sex offender. As a matter of fundamental fairness, moreover, the defendant is entitled to

a hearing on the issue of his or her status as a repetitive sex offender. *State v. Horne,* 56 *N.J.* 372, 375 (1970).

Here, defendant argues that the parole consequences and stigma of an Avenel sentence deprive him of liberty beyond the deprivation inherent in an ordinary State Prison sentence. With specific reference to his own case, he contends that the standard employed by the trial court constituted a deprivation of his liberty without due process of law.

The threshold question is whether a sentence at Avenel, rather than another State correctional facility, implicates a liberty interest that is protected by constitutional notions of due process. *New Jersey Parole Bd. v. Byrne,* 93 *N.J.* 192, 199 (1983); *see Vitek v. Jones,* 445 *U.S.* 480, 487, 100 *S.Ct.* 1254, 1261, 63 *L.Ed.*2d 552, 561 (1980) (transfer of prisoners to mental institutions involves protected-liberty interest). If so, the further question is what process is due to protect that interest. *New Jersey Parole Bd., supra,* 93 *N.J.* at 208.

 We find, and the State concedes, that the actions of the trial court in sentencing the defendant to Avenel implicate a liberty interest. With respect to prisoners in the context of probation, parole, and incarceration, that interest requires the observation of "minimum requirements of procedural due process appropriate for the circumstances * * *." *Vitek v. Jones, supra,* 445 *U.S.* at 490–91, 100 *S.Ct.* at 1262–63, 63 *L.Ed.*2d at 563 (citing *Wolff v. McDonnell,* 418 *U.S.* 539, 558, 94 *S.Ct.* 2963, 2976, 41 *L.Ed.*2d 935, 952 (1974)).

In this case, the liberty interests arise from the expectation that ADTC parole standards and rehabilitative procedures will not be applied absent a finding of "repetitive" and "compulsive behavior." *N.J.S.A.* 2C:47–3a. The statute specifically provides that "no such person may be sentenced to the [ADTC] in the absence of such a finding," *N.J.S.A.* 2C:47–3a, and that if it does not appear from the psychological report that the offender's behavior is repetitive and compulsive, "the court shall not

impose sentence on such person as provided by this chapter," *N.J.S.A.* 2C:47–3d.

The Appellate Division reasoned that because the trial court "may" order an ADTC sentence on a finding of repetitive and compulsive behavior, "the court is free to impose whatever sentence is appropriate to the crime." 213 *N.J.Super.* at 593. The relevant question, however, is whether the trial court had the discretion to find that defendant was a repetitive and compulsive sex offender absent a finding that he had engaged in conduct of that nature. *See Vitek, supra,* 445 *U.S.* at 489–90, 100 *S.Ct.* at 1262, 63 *L.Ed.*2d at 563 (finding liberty interest where transfer to mental hospital would be ordered only on factual finding, even though transfer is discretionary on finding). Where, as here, the legislative intent is clear that a sentence to Avenel shall not be imposed absent a finding of repetitive and compulsive behavior, the imposition of such a sentence implicates a liberty interest. Contrary to the ruling of the Appellate Division, 213 *N.J.Super.* at 593, the existence of defendant's liberty interest does not depend on a finding that the Avenel sentence carries more severe parole consequences than an ordinary prison sentence. *See Vitek, supra,* 445 *U.S.* at 483–84 nn. 1 & 2, 487–88, 100 *S.Ct.* at 1259 nn. 1 & 2, 1261, 63 *L.Ed.*2d at 559 nn. 1 & 2, 569 (liberty interest implicated by defendant's transfer to mental hospital although parole determination not affected).

The defendant also claims that the due process clause vests him with a liberty interest in averting the stigma associated with his classification as a "repetitive and compulsive" sex offender. *Vitek, supra,* 445 *U.S.* at 491–94, 100 *S.Ct.* at 1262–64, 63 *L.Ed.*2d at 564–66 (stigma associated with an involuntary commitment to a mental hospital is a deprivation of liberty that triggers due-process rights). The State argues, however, that *N.J.S.A.* 2C:47–3 does not require a finding of mental illness prior to sentencing to Avenel. In addition, Avenel is a correctional institution under the control of the Department of Corrections, not a mental institution. Further,

according to the State, "no stigma beyond that attached to any conviction for commission of a sex offense is imposed as a result of an ADTC sentence."

We find that classification as a "repetitive" and "compulsive" sex offender under *N.J.S.A.* 2C:47–3a inflicts a greater stigma than that resulting from the conviction for a sex offense. The Act states that a repetitive and compulsive sex offender is sent to Avenel "for a program of specialized treatment for his mental condition." *N.J.S.A.* 2C:47–3a. Although the added stigma may be slight, it should be considered in determining the process due to a defendant before imposition of an Avenel sentence.

Having determined that a liberty interest is implicated by a decision to sentence to Avenel, we must now determine what process is due. *See Byrne, supra,* 93 *N.J.* at 208. Although the existence of a liberty interest entitles the defendant to some due process protections, a higher standard of proof is not necessarily among them. The determination of the demands of due process generally involves balancing three factors: the nature of the private interest, the countervailing governmental interest, and the risk of error in the ultimate determination created by not using the requested procedure. *Mathews v. Eldridge,* 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976); *Byrne, supra,* 93 *N.J.* at 210. In the context of federal sentencing, the application of this test has led to the conclusion that the characterization of a defendant as a "dangerous special offender" did not require a higher standard of proof than a preponderance of the evidence. *United States v. Davis,* 710 *F.*2d 104, 107 (3d Cir.), *cert. denied,* 464 *U.S.* 1001, 104 *S.Ct.* 505, 78 *L.Ed.*2d 695 (1983).

Turning to the present case, the nature of the private interest is twofold. First, a defendant has the legitimate expectation that ADTC parole standards will not be applied absent a finding of "repetitive" and "compulsive" behavior. *N.J.S.A.* 2C:47–3a. That finding does not necessarily mean that the

defendant will in fact serve a longer term at Avenel. Hence, the liberty interest implicated in an Avenel sentence is weak. In addition, no prisoner enjoys a guarantee of parole at any particular time. At either Avenel or an ordinary correctional facility, the defendant is subject to a determinate term, and may earn good behavior and work credits. *N.J.S.A.* 30:4–92, 30:4–140; *see Savad v. Department of Corrections,* 178 *N.J. Super.* 386, 388–89 (App.Div.1981) (noting that the State conceded that Avenel inmates were eligible for work and good behavior credits as of the dates of their resentences under the Code).

Furthermore, rehabilitative procedures are for the benefit not only of the defendant, but also of society. Indeed, the State has a substantial interest in treating a repetitive sex offender. The victims of sex offenses are often the most precious and vulnerable members of society, children. We have no difficulty in concluding that the State interest in rehabilitation of a convicted sex offender is substantial.

Nonetheless, some enhanced risk of error inheres in the determination that a defendant should be assigned to Avenel when that determination is made by a preponderance of the evidence. That risk doubtless would be reduced if the standard were more demanding. Additionally, we recognize that an ADTC sentence necessitates the review of psychological and psychiatric reports, which often involve the interpretation of facts and which are subject to the "subtleties and nuances of psychiatric diagnosis." *Addington v. Texas,* 441 *U.S.* 418, 430, 99 *S.Ct.* 1804, 1811, 60 *L.Ed.*2d 323, 333 (1979) (the appropriateness of an involuntary civil commitment for mental illness must be proven by clear and convincing evidence). Notwithstanding the uncertainty of a psychiatric and psychological diagnosis, we are reluctant to require an enhanced standard of proof that could subvert the State's interest in the rehabilitation of repetitive sex offenders.

 When sentencing a convicted sex offender, the court does not choose between freedom and commitment of the

defendant, but only between commitment at one state correctional facility or another. In concluding that a defendant is a "repetitive and compulsive" sex offender, the court need not determine that the defendant is mentally ill and a danger to others. *See Addington v. Texas, supra,* 441 *U.S.* at 429, 99 *S.Ct.* at 1811, 60 *L.Ed.*2d at 333 (rejecting the contention that civil commitment of the mentally ill requires proof by a reasonable doubt, but adopting the requirement that such a commitment requires proof that is clear and convincing). The court decides only that a defendant, already found beyond a reasonable doubt to be guilty, is a "repetitive and compulsive" sex offender. Considering defendant's diminished liberty interest, we believe that due process does not demand the protection of that interest by any standard more demanding than a preponderance of the evidence. On balance, the minimal risk of error, when combined with the attenuated liberty interests implicated by an Avenel sentence, does not outweigh the substantial State interest in classifying and treating repetitive and compulsive sex offenders.

## V

In contending that he had a right to treatment in the county jail, defendant relies on *N.J.S.A.* 2C:47–4a, which provides: "The Commissioner of the Department of Corrections, upon commitment of [a sex offender], shall provide for his treatment in the [ADTC]." Under the former Sex Offender Act, *N.J.S.A.* 2A:164–1 to –28 (repealed 1979), with its focus on rehabilitation, a persistent sex offender had a more readily recognizable right to prompt treatment. *See State v. Harvey,* 162 *N.J.Super.* 386 (Law Div.1978) (Commissioner's failure to devise treatment plan for inmate transferred out of Avenel violated affirmative duty to treat inmate), *aff'd o.b.,* 170 *N.J. Super.* 391 (App.Div.1979). The purpose of the Code, however, is not just to treat, but also to punish sex offenders. *See State v. Chapman,* 95 *N.J.* 582, 592 (1984) ("The Code recognizes that sex offenders, in addition to being treated for psychological

problems, should be punished for their wrongful acts"). Punishment is an integral part of the legislative scheme.

Accordingly, we find that defendant's temporary imprisonment while waiting transfer to Avenel does not violate that scheme. In a more perfect world, defendant's rehabilitative treatment would have started earlier. Defendant has never contended, however, that he was singled out for punitive treatment. He was, in a sense, a victim of the limited resources available to treat persistent sex offenders. The Commissioner, for his part, did as well as he could with the limited resources at Avenel. Furthermore, the State has taken steps to provide additional facilities at Avenel. A forty-eight-bed addition was completed in 1985, and a sixty-four-bed addition is scheduled for completion in May of this year. A 304–bed facility has been designed and, although construction has not yet started, is scheduled for completion in 1989. As regrettable as the delay may have been for defendant, he is now receiving rehabilitative treatment. Under all the circumstances, we find no violation of any rights conferred on defendant by the Code.

■■■ Neither are we persuaded that the failure to treat him more promptly, with its assumed delay on his evaluation for parole, violated his rights of substantive due process under the fourteenth amendment to the United States Constitution and article I, paragraph 1 of the New Jersey Constitution. Substantive due process requires that the "nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 *U.S.* 715, 738, 92 *S.Ct.* 1845, 1858, 32 *L.Ed.*2d 435, 451 (1972). As we have noted, one of the purposes of confinement of sex offenders is punishment. Defendant's confinement at the county jail was reasonably related to that purpose. We find no support for the contention that a persistent sex offender has a constitutional right to treatment.

■■■ Nor does the delay in treatment constitute cruel and unusual punishment under the eighth amendment to the United States Constitution or article I, paragraph 12 of the New Jersey

Constitution. We recognize that to a certain extent defendant's parole eligibility depends on his psychological status and that the delay in treatment affects his ability to attain that status. Defendant, however, does not have a constitutional right to parole. *See Greenholtz v. Nebraska Penal Inmates*, 442 *U.S.* 1, 7, 99 *S.Ct.* 2100, 2104, 60 *L.Ed.2d* 668, 675 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"). Here, defendant was sentenced to a determinate term of seven years, and his incarceration in the county jail was well within that term.

Defendant's request that he be resentenced to an ordinary prison term is both counterproductive and paradoxical-counterproductive because of defendant's need for rehabilitation, paradoxical because such a sentence would preclude defendant from receiving the treatment the deprivation of which is the basis for his appeal.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*Opposed*—None.