STATE OF NEBRASKA, APPELLEE, V. LAWRENCE E. HARRIS, APPELLANT.

463 N.W.2d 829

Filed December 14, 1990. No. 89-1259.

Dean S. Forney, Box Butte County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Steven J. Moeller for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

In this appeal, Lawrence E. Harris, age 54, in substance claims that the trial court erred (1) in basing its finding that he is a mentally disordered sex offender upon "clear and convincing" evidence, rather than upon evidence beyond a reasonable doubt; (2) in finding that he in fact is a mentally disordered sex offender; and (3) in imposing an excessive sentence.

We affirm the application by the district court for Box Butte County of a "clear and convincing evidence" standard in finding that Harris is a mentally disordered sex offender (MDSO) and the 20-month to 5-year sentence imposed upon him for sexually assaulting a child. The defendant was credited with 55 days on said sentence for time served.

Harris was initially charged with two crimes: (1) first degree sexual assault on his 7-year-old stepgranddaughter, a violation of Neb. Rev. Stat. § 28-319 (Reissue 1989), a Class II felony carrying a penalty of not less than 1 nor more than 50 years' imprisonment, Neb. Rev. Stat. § 28-105 (Reissue 1985), and (2) sexual assault of a child, in violation of Neb. Rev. Stat. § 28-320.01 (Reissue 1989), a Class IV felony carrying a penalty of up to 5 years' imprisonment, up to a $10,000 fine, or both, § 28-105.

First degree sexual assault involving a child requires "sexual penetration," which means "sexual intercourse in its ordinary meaning . . . or any intrusion, however slight, of any part of the

. . . victim's body or any object manipulated by the actor into the genital . . . [opening] of the victim's body . . . ." Neb. Rev. Stat. § 28-318 (Reissue 1989). A person commits sexual assault of a child if he or she subjects another person 14 years of age or younger to sexual contact and the actor is at least 19 years of age or older. § 28-320.01. "Sexual contact" means the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts when the touching may reasonably be construed as being for the purpose of sexual arousal or gratification of either party. § 28-318.

Pursuant to a plea agreement, Harris entered a plea of guilty to the charge of sexual assault of a child, and the charge of first degree sexual assault was dismissed. The bill of exceptions filed with this court contains only the sentencing hearing and not the hearing in which the defendant entered his guilty plea. The presentence investigation reveals that Harris' wife, who had been doing housework, went into a bedroom of the couple's home about 9 p.m. on May 31, 1989. There she found her husband and his 7-year-old stepgranddaughter sitting on a bed. The child was dressed in her nightgown and underpants. Mrs. Harris observed that her husband was kissing his stepgranddaughter on the neck in a "passionate manner."

While her husband fell asleep, Mrs. Harris questioned the child, who reported that Harris had touched her genitals with his hand, in addition to kissing her on the neck. The child also said this had occurred at other times in the past. When asked whether Harris had ever put anything inside her, the child said he had used his finger. The child told a police officer that Harris had touched her private parts 19 to 20 times previously, and would on occasion put his tongue in her mouth while kissing her.

When Harris was interviewed by an Alliance police officer, he admitted rubbing the victim's crotch area with his fingers, but denied reaching inside the victim's panties to fondle her genital area on the night in question. Harris did admit that on an earlier occasion he had reached inside the child's shorts and rubbed her genital area. Throughout the interview, the defendant maintained that he was in a drunken state and really

did not remember what happened the night of May 31. Harris accused the 7-year-old of being "sexually promiscuous."

Upon acceptance of Harris' guilty plea, the trial court, as required by Neb. Rev. Stat. § 29-2912 (Reissue 1989) and *State v. Klappal*, 218 Neb. 374, 355 N.W.2d 221 (1984), ordered an evaluation to determine whether the defendant was an MDSO. A "mentally disordered sex offender" means any person who has a mental disorder and who, because of the mental disorder, has been determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others. Neb. Rev. Stat. § 29-2911(2) (Reissue 1989).

The two psychiatrists who examined Harris came to different conclusions. Their reports were received in evidence without objection at the MDSO hearing. Dr. John Baldwin diagnosed the defendant as being a chronic alcoholic, as opposed to being an MDSO. Harris told both doctors that he normally drank 8 beers per day, but on the night of May 31 he had drunk 22 beers. Dr. Baldwin thought that the offense in question did not arise out of any kind of mental disorder other than "characterologic poor self-control." He predicted that if Harris was sufficiently punished, Harris would not repeat a sexual offense. "He has an inclination to act out sexually when he gets drunk, and I think if he were sufficiently punished for this, this would not be likely to occur," Dr. Baldwin wrote. Conversely, Dr. Y. Scott Moore diagnosed the defendant to be an MDSO and his mental disorder to be pedophilia. Dr. Moore found that Harris had committed a sexual offense in a repeated fashion "which is likely to cause harm to the victim." The psychiatrist found that treatment was available at the sexual offender's program at the Lincoln Regional Center and predicted that treatment would be ineffective unless it lasted 3 1/2 to 4 years.

As was its prerogative as a fact finder, the trial court obviously rejected Dr. Baldwin's diagnosis and accepted Dr. Moore's diagnosis. See *State v. Todd*, 223 Neb. 462, 390 N.W.2d 528 (1986). The court found that the evidence was clear and convincing that Harris was an MDSO and that he could benefit from treatment. A maximum confinement sentence was imposed upon Harris.

In defendant's first assignment of error, he claims only that the proper standard of proof in determining whether a defendant is an MDSO is proof beyond a reasonable doubt and that any lesser standard of proof falls short of providing the level of due process required by the Nebraska and U.S. Constitutions.

A claim that one is being deprived of a liberty interest without due process of law is typically examined in three stages. The question in the first stage is whether there is a protected liberty interest at stake. If so, the analysis proceeds to the second stage, in which it is determined what procedural protections are required. Upon the resolution of that issue, the analysis moves on to the third and final stage, in which the facts of the case are examined to ascertain whether there was a denial of that process which was due. *State v. Cook, ante* p. 636, 463 N.W.2d 573 (1990). See, e.g., *Washington v. Harper,* _____ U.S. _____, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990).

Without question, a liberty interest is at stake in the determination of whether a defendant is an MDSO under Nebraska's MDSO statutes. If a person is found to be a treatable MDSO and there is treatment available, he or she may be confined not in a prison, but in a mental facility for involuntary treatment for his or her mental disorder. Moreover, a social stigma attaches because of an MDSO label. Thus, during MDSO proceedings, a defendant is entitled to at least minimum procedural due process protection. See *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980).

Having determined that a liberty interest is implicated, we must next determine the question, what process is due? In that regard, Harris questions only the clear and convincing standard of proof employed by the trial court in determining whether a defendant is an MDSO. Harris maintains that due process mandates that the proper standard of proof for an MDSO designation requires evidence beyond a reasonable doubt. Neither the *Vitek* Court nor Nebraska's statutes specifically express what standard of proof due process requires in commitments by a court under Nebraska's MDSO statutes.

Harris relies upon *People v. Burnick*, 14 Cal. 3d 306, 535 P.2d 352, 121 Cal. Rptr. 488 (1975), to support his contention

that to meet due process requirements, the State must prove a criminal defendant's MDSO status beyond a reasonable doubt.

Under the *Burnick* case in California, and in several other states utilizing the "beyond a reasonable doubt" standard of proof in determining whether a defendant is an MDSO, the defendant is subjected to indefinite and even lifetime incarceration in a mental institution. Indeed, the California court has recognized that one reason proof beyond a reasonable doubt is required in that state's scheme is "because of possible indeterminate confinement in a prison-like state mental institution." *McComb v. Commission on Judicial Performance*, 19 Cal. 3d Spec. Trib. Supp. 1, 11, 564 P.2d 1, 6, 138 Cal. Rptr. 459, 464 (1977). See, also, Colo. Rev. Stat. § 16-13-211 (1990) (beyond a reasonable doubt), and Colo. Rev. Stat. § 16-13-203 (1990) (indeterminate term of a minimum of 1 day and a maximum of the MDSO's natural life); Ill. Rev. Stat. ch. 38, para. 105-3.01 (Supp. 1990) (beyond a reasonable doubt), Ill. Rev. Stat. ch. 38, para. 105-8 (1980) (committed until the person has recovered), and *People v. Sly,* 82 Ill. App. 3d 742, 403 N.E.2d 72 (1980) (indefinite incarceration); Mass. Gen. L. ch. 123A, § 5 (1986) (if court finds upon such hearing that the person is a sexually dangerous person, MDSO may be committed for indeterminate period of a minimum of 1 day and a maximum of such person's natural life), and *In re Andrews,* 368 Mass. 468, 334 N.E.2d 15 (1975) (beyond a reasonable doubt).

At the other end of the burden of proof pendulum is the preponderance of the evidence standard employed by New Jersey. See *State v. Howard*, 110 N.J. 113, 539 A.2d 1203 (1988). Its MDSO scheme basically coincides with that of Nebraska. In justification of its use of a preponderance of the evidence standard, the *Howard* court declared: "When sentencing a convicted sex offender, the court does not choose between freedom and commitment of the defendant, but only between commitment at one state correctional facility or another." *Id*. at 130-31, 539 A.2d at 1212.

Oregon's intermediate evidential standard in MDSO determinations falls between the standards of proof beyond a reasonable doubt and by a preponderance of the evidence. Its MDSO statute provides for commitment to a mental hospital

based upon clear and convincing evidence. Or. Rev. Stat. § 426.675(2) (1989).

Under Nebraska's MDSO statutes, a defendant must *first* be sentenced for the sexual offense of which he was convicted. It is only after an MDSO defendant has been sentenced that the court may commit him to a regional center for treatment. Neb. Rev. Stat. § 29-2915(3) (Reissue 1989). That commitment is not indefinite in duration. It is only until a court determines, based upon the report of a reviewing panel, that a defendant is no longer mentally disordered or until the defendant has received the maximum benefit of treatment, provided, however, that such confinement in a regional center may not extend beyond the maximum length of the defendant's sentence without a further hearing before a mental health board. The reviewing panel consists of an attorney, a psychologist, two physicians licensed in Nebraska to practice medicine and surgery who have had at least 3 years of special training in treatment of mental disorders, and a layperson. The panel must annually, or upon motion of an MDSO, review all records of mentally disordered sex offenders and file a written report with the committing judge. See, Neb. Rev. Stat. §§ 29-2913 to 29-2918 (Reissue 1989); *State v. Sell*, 213 Neb. 437, 329 N.W.2d 361 (1983). As will be discussed later in this opinion, at the initial commitment hearing before the court, insofar as the burden of proof is concerned, the liberty interest of a subject who has been convicted of a sexual crime is no greater than the liberty interest of a subject who is civilly committed to a mental hospital. The U.S. Supreme Court has held that the burden of proof in a civil commitment of a mentally ill person may be by "clear and convincing evidence." Any lesser burden of proof would deny the mentally ill person due process of law. *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

The liberty interest an MDSO has, after being sentenced for the sexual crime he or she committed, is the same as that of a prisoner who is transferred from a prison to a mental hospital. In *Vitek v. Jones*, 445 U.S. 480, 491, 493-94, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), the U.S. Supreme Court held:

[T]he transfer of a prisoner from a prison to a mental hospital must be accompanied by appropriate procedural

protections. . . .

. . . .

. . . [I]nvoluntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual. . . . A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections.

. . . [H]ere, the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections.

In this state, a civil commitment impacts a mentally ill person's liberty interest much more than does an initial commitment by a court under Nebraska's MDSO statutes. Under the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. §§ 83-1001 to 83-1081 (Reissue 1987), in a civil proceeding, where the burden of proof is by clear and convincing evidence, a mentally ill person may be subjected to an indefinite or even lifetime commitment. In an MDSO commitment by a court, a commitment to a mental hospital is, at worst, limited by the length of the penal sentence imposed upon the MDSO. § 29-2915.

An MDSO's commitment to a mental facility in Nebraska can thus be analogized to a prisoner's being transferred from a prison to a mental facility because of a mental illness, which is somewhat similar to a civil commitment. Nebraska, in its civil mental commitment statutes, has determined that a clear and convincing standard of proof is sufficient to deprive a mentally ill person of his liberty indefinitely if the subject continues to be a mentally ill dangerous person. § 83-1038. Mentally ill dangerous person means "any mentally ill person . . . who presents: (1) A substantial risk of serious harm to another person or persons within the near future as manifested by

evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm . . . ." § 83-1009. By comparison, § 29-2911 provides that "[m]entally disordered sex offender shall mean any person who has a mental disorder and who, because of the mental disorder, has been determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others." That an MDSO may be confined to a regional center for his or her malady under the civil commitment procedure is established in Neb. Rev. Stat. § 29-2920 (Reissue 1989). That statute provides:

> Ninety days prior to the release from custody of any mentally disordered sex offender who has (1) previously been adjudged untreatable and sentenced pursuant to section 29-2914, (2) been determined to have received the maximum benefit from treatment and sentencing pursuant to section 29-2919, (3) been sentenced to treatment pursuant to section 29-2915, but whose time in treatment will, within ninety days, exceed the maximum length of time such offender could have been sentenced on the underlying criminal conviction, the Board of Parole, Department of Correctional Services, or other unit of government having final release authority shall give notice to the county attorney who prosecuted the underlying criminal charge that the release of such offender is so pending. Upon receipt of such notice from the releasing authority, the county attorney shall cause mental health commitment proceedings to be commenced on behalf of such offender pursuant to the Nebraska Mental Health Commitment Act.

The Nebraska Mental Health Commitment Act is the vehicle for a civil commitment proceeding.

For a court to commit a criminal defendant to a regional center under Nebraska's MDSO act, the State must prove by clear and convincing evidence (1) that the defendant is an MDSO, (2) that the defendant is treatable, and (3) that treatment is available in this state. Here, the district court for Box Butte County applied a clear and convincing standard of proof in determining whether Harris was an MDSO. The court,

therefore, met the federal due process clause burden of proof required by *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), and *Addington v. Texas*, 441 U.S. 418, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). Nebraska's Constitution requires no greater burden of proof. Harris' first assignment of error is meritless.

In his second assignment of error, Harris claims the trial court erred in finding that in fact Harris was an MDSO.

Whether a defendant is an MDSO is a question of fact to be determined by the trial court. *State v. Bovill*, 223 Neb. 764, 393 N.W.2d 715 (1986). In *Addington v. Texas, supra* at 441 U.S. at 429, the U.S. Supreme Court found: "Whether the individual is mentally ill and dangerous . . . turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists." Likewise, in MDSO cases the fact finder must rely upon expert interpretation of the facts. In Harris' case, one psychiatrist found that Harris was an MDSO, while the second psychiatrist found that he was not an MDSO. The fact that two psychiatrists disagree as to whether a defendant is an MDSO does not invalidate such a finding by a court. There is no statutory requirement that the opinion of the examiners be unanimous. *State v. Todd, supra.* Here, the trial court adopted the diagnosis of the psychiatrist who found Harris to be an MDSO and rejected the diagnosis of the other psychiatrist, who found that Harris was an alcoholic with "characterologic poor self-control." The opinion of the second psychiatrist that Harris is not an MDSO was not binding upon the trial judge, who was the fact finder in this case. See *Way v. Hendricks Sodding & Landscaping, Inc., ante* p. 519, 462 N.W.2d 99 (1990). The opinion of the psychiatrist who found Harris to be an MDSO, the defendant's repeated sexual assaults on the victim, and the defendant's guilty plea to sexual assault of a child were sufficient for the trial court to find by clear and convincing evidence that Harris is an MDSO. There is no merit to the defendant's second assignment of error.

In his last assignment of error, Harris contends that his sentence is excessive. He argues that he is in his fifties, has no prior criminal record, has a good family history, and has an average marital, educational, and employment history.

We have repeatedly held that an order imposing a sentence within statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Garza, ante* p. 215, 459 N.W.2d 747 (1990). Harris' sentence is within the prescribed statutory limits.

The defendant's presentence investigation report reflects that he committed sexual assaults on the victim as many as 20 times; that during an evaluation, the defendant showed no remorse for the sexual offense to which he pled guilty and in fact vehemently denied any wrongdoing; and that an evaluation team recommended that if the defendant was found to be an MDSO, he be given a maximum sentence. The defendant was found to be an MDSO.

Taking into consideration the seriousness of the crime Harris committed and its repetitiveness, and the material and recommendations contained in the presentence report, we cannot say that the trial court abused its discretion in sentencing Harris within the statutorily prescribed limits.

AFFIRMED.