No. 95-3070

Mark A. Schumacher,                    *
                                       *
          Appellant,                   *
                                       *   Appeal from the United States
     v.                                *   District Court for the
                                       *   District of Nebraska.
Frank X. Hopkins, Warden,              *
Nebraska State Penitentiary,           *
                                       *
          Appellee.                    *

                    Submitted:  February 14, 1996

                      Filed:  May 21, 1996

Before BOWMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

BEAM, Circuit Judge.

     In 1990, a jury found Mark Schumacher guilty of first degree sexual
assault, two counts of first degree false imprisonment, and two counts of
using a firearm to commit a felony.  During his sentencing, he was
classified as a nontreatable mentally disordered sex offender.  His state
court appeal and postconviction actions were unsuccessful.  Schumacher then
filed a petition for habeas corpus under 28 U.S.C. § 2254 in federal
district court, alleging that ineffective assistance of counsel rendered
his sentencing classification invalid.  The district court[1] denied the
petition and we affirm.

_____

[1]After de novo review, the Honorable Richard G. Kopf, United
States District Judge for the District of Nebraska adopted the
report and recommendation of United States Magistrate Judge David
L. Piester.

## I. BACKGROUND

On the night of April 2, 1990, Schumacher and an accomplice went out in search of drugs and/or money. Their quest led them to take two people from two different homes, at gunpoint, in the hopes that the captives could facilitate their undertaking. While transporting the hostages to a third home, the pair discussed whether they would kill their female victim. While his accomplice approached the third home with one of the captives, Schumacher sexually assaulted and raped the other detainee. Police arrived while he was in flagrante delicto. After trial, the court received the results of two postconviction psychiatric examinations and determined that Schumacher was a nontreatable mentally disordered sex offender. Schumacher, who faced potential sentences of fifty years for the rape, five years for each false imprisonment, and twenty years for each firearms offense, received sentences of five to ten years for the rape count, one to two years for each false imprisonment count, and one year on each firearms count. See State v. Schumacher, 480 N.W.2d 716, 717 (Neb. 1992).

Schumacher appealed his convictions and sentence to the Nebraska Supreme Court, arguing that there was insufficient evidence and that his sentence was excessive. That court affirmed the convictions and sentence. Id. at 719. He then filed state postconviction actions contesting aspects of the trial court's determination that he was not a treatable mentally disordered sex offender. State v. Schumacher, No. A-93-574, 1994 WL 114338 (Neb. App. Apr. 5, 1994). The trial court denied relief and the appeals court affirmed. Id.

Schumacher subsequently filed this federal habeas corpus petition, which the district court denied without an evidentiary

hearing.[2]  Schumacher appeals.  He argues that his trial counsel was ineffective for: 1) failing to request a second set of psychiatric sentencing examinations, as was Schumacher's statutory right; 2) failing to inform Schumacher of all the adverse consequences flowing from classification as a nontreatable mentally disordered sex offender; and 3) failing to object to the receipt of one of the exams which Schumacher claims relied on statements obtained in violation of his Miranda rights.

## II. DISCUSSION

We review the application of the law to the evidence underlying ineffective assistance of counsel de novo, while giving the appropriate deference to any lower court adjudication of the historical facts.  Wycoff v. Nix, 869 F.2d 1111, 1117 (8th Cir.), cert. denied, 493 U.S. 863 (1989). Thus, in considering Schumacher's claims of ineffective assistance of counsel, we consider two legal questions:  whether counsel's performance was constitutionally deficient; and if so, whether the defendant was prejudiced by that deficient performance.  Kenley v. Armontrout, 937 F.2d 1298, 1303 (8th Cir.), cert. denied, 502 U.S. 964 (1991).  In considering the first prong, we must defer to counsel's strategic decisions and must not succumb to the temptation to be Monday morning quarterbacks.  Snell v. Lockhart, 14 F.3d 1289, 1301 (8th Cir.), cert. denied, 115 S. Ct. 419 (1994).  It is the defendant's burden to overcome the strong presumption that counsel's actions constituted objectively reasonable strategy under the circumstances.  Id.  If the petitioner shows that counsel's performance was constitutionally deficient, he or she must then

---

[2]Despite appellee's contrary impression, Schumacher has made no arguments as to the denial of the evidentiary hearing.  This is most probably because petitioner realizes he has not met the requisite burden.  See Townsend v. Sain, 372 U.S. 293, 312-13 (1963), overruled, in part, on other grounds, Keeney v. Tamayo-Reyes, 504 U.S. 1, 4 (1992).

establish that the deficient performance prejudiced the outcome of the proceeding, i.e., that counsel's conduct rendered the result of the proceeding unreliable.  See Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).  A necessary condition for establishing prejudice is to show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 368-70.

## A. Failure to Request Further Psychiatric Exams

We agree with the well-reasoned opinion of the district court that Schumacher has not alleged any facts that demonstrate prejudice resulting from his counsel's decision not to request a second set of psychiatric examinations.  Schumacher has not even hinted at the existence of proof that a second set of tests would have made any difference in the outcome of the proceeding.

However, even more fundamentally, counsel's decision not to request a second battery of exams was eminently reasonable.  Under the statutory scheme in effect at the time of Schumacher's sentencing, all defendants convicted of sexual offenses in Nebraska were given presentence psychiatric examinations.  Neb. Rev. Stat. §§ 29-2912 & 2913 (Reissue 1989).  The exams were designed to aid the sentencing court in deciding, by clear and convincing evidence, whether a defendant was a Mentally Disordered Sex Offender (MDSO).  Id.; State v. Harris, 463 N.W.2d 829, 834-35 (Neb. 1990).  The answer in no way affected the term of incarceration to which a defendant was sentenced, id. at 834; State v. Miller, 381 N.W.2d 156, 158 (Neb. 1986), but, rather, permitted the state to adopt the most appropriate rehabilitation scheme to be followed during the sex offender's incarceration.

If a defendant was found to be an MDSO, a second question arose: whether such mental disorder was treatable?  This determination again aided the state in its allocation of treatment

resources. Neb. Rev. Stat. §§ 29-2914 & 2915 (Reissue 1989). Any defendant found to be an MDSO, treatable or nontreatable, faced a mandatory civil commitment proceeding upon his release from prison. Id. at § 29-2920.

Once two psychiatrists had come to the conclusion that Schumacher was an MDSO based on an interview with him, his background, and the facts of his crime, it was a reasonable strategy to forego further exams which, as likely as not, would have added more unfavorable material to Schumacher's file. This information would be available at the later mandatory civil commitment proceeding. If Schumacher did not amass a portfolio of unfavorable psychiatric reports, counsel could reasonably have hoped that Schumacher's conduct during his incarceration, where he would be divorced from alcohol (apparently his main enemy), would be such that later civil commitment would be less likely. Faced with unanimity on defendant's MDSO status, this was a reasonable strategy. Thus, we cannot find that counsel's performance was objectively unreasonable.

### B. Failure to Advise Petitioner of the Adverse Consequences of Nontreatable MDSO Status

At the sentencing hearing, Schumacher's counsel advised the court that, after consultation, he and Schumacher had decided not to request further examination, and that they felt it was in Schumacher's best interests to be classified as a nontreatable MDSO. Thus, counsel did not challenge the psychiatric report finding Schumacher to be nontreatable.[3] Schumacher now argues that had he known of the adverse consequences attaching to the finding of nontreatability, he would not have consented to the classification. However, the adverse consequences to which

---

[3]While both examining psychiatrists found Schumacher to be an MDSO, one found him to be treatable and the other found him to be nontreatable.

Schumacher objects (he mentions stigma and the commitment hearing) inhere in an MDSO classification itself and are not limited to a person in nontreatable status.

Schumacher states that the record does not show that his attorney advised him of adverse consequences. Our review of the record, however, shows that Schumacher and his counsel went over the reports and discussed which classification, treatable or nontreatable, would be in his best interests. While both treatable and nontreatable MDSOs face commitment proceedings at the end of their terms, if classified as treatable, Schumacher faced immediate assignment to a Regional Center--the State of Nebraska's primary mental institutions. Neb. Rev. Stat. § 29-2915 (Reissue 1989). Thus, Schumacher could clearly have preferred to duck that immediate threat and hoped to have sufficiently rehabilitated himself by the end of his prison term to prevail at the inevitable commitment proceedings, in which case he would be able to avoid such assignment altogether. This calculus is not objectively unreasonable, and we see no deficient performance. Schumacher does not deny that this was his calculus, he merely alleges that we cannot discern the substance of his and counsel's admitted strategy as to the treatable/nontreatable determination from the record. Given established consultation and a strategically wise choice, we decline Schumacher's invitation to speculate as to the deficiencies of that consultation. Further, as the district court held, Schumacher has not alleged any facts showing prejudice, that is, that, but for counsel's advice he would not be classified as a nontreatable MDSO.

### C. Failure to Object to Examining Psychiatrist's Use of Exculpatory Statements

Schumacher's final argument is that his counsel was ineffective because counsel did not object to the report of the psychiatrist who found him to be nontreatable. That report

referred to protestations of innocence that Schumacher made at the interview. Schumacher now argues that use of exculpatory statements made during the interview to determine his status as nontreatable violates his Fifth Amendment rights as interpreted by Estelle v. Smith, 451 U.S. 454 (1981).[4] From this argument, Schumacher makes the leap in logic that his counsel was therefore constitutionally ineffective for failing to object to the receipt of that report.

While we make no finding as to the application of Estelle to the statutory scheme for classifying convicted sex offenders in effect at the time of Schumacher's sentencing, counsel is not ineffective for failing to make an objection which he or she reasonably believes is against the defendant's interests. Here, faced with two psychiatric reports diagnosing Schumacher as an MDSO, counsel's obvious strategy was to help Schumacher avoid immediate commitment by being classified as nontreatable as opposed to treatable. Counsel's acceptance of the report in question, without objection, was therefore reasonable and did not constitute deficient performance.

_____

[4]In Estelle, the Supreme Court found that the state's use of a defendant's preconviction statements, made in a psychiatric exam given for another purpose, during the penalty phase of a capital case violated the defendant's Fifth and Sixth Amendment rights. 451 U.S. at 454. Estelle, however, by its own terms, does not apply to all uses of presentencing interviews, id. at 469 n.13, and may be distinguishable on the merits. In Estelle, the Court was faced with a pretrial psychiatric competency examination which was used by the state at the penalty phase of Estelle's capital murder trial to show his future dangerousness. Unfortunately, Estelle's counsel was evidently unaware of the interview which had been ordered sua sponte by the trial court. The interview took place without Estelle's counsel's permission and without counsel being able to advise Estelle as to his interests; the interview was used for a purpose other than that for which it was ordered (competency) thus vitiating any hypothetical advice of counsel; and the interviewing psychiatrist was allowed to testify, over defendant's objections, despite not appearing on the witness list and despite counsel's actual surprise. None of these factors are present in Schumacher's case.

Finally, despite Schumacher's contrary contentions, the diagnosis of nontreatability was not based uniquely on Schumacher's protestations of nonculpability at the interview. An attorney does not provide ineffective assistance by failing to make an objection which is of dubious factual and unknown legal merit, and which runs counter to his client's interests.

## III. CONCLUSION

Because Schumacher received constitutionally effective assistance of counsel, the district court's denial of his petition for a writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.