237 N.J. Super. 79 (1988)
566 A.2d 1181
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAY HASS, DEFENDANT.
Superior Court of New Jersey, Law Division Somerset County.
Decided June 22, 1988.
*81 Timothy Van Hise for plaintiff (Nicholas L. Bissell, Jr., Prosecutor of Somerset County, attorney).
Larry Blumenstyk for defendant (Stirone, Fein, Kahn & Blumenstyk, attorneys).
IMBRIANI, J.S.C.
The Sex Offender Act, N.J.S.A. 2C:47-1 to -7, permits a sentencing judge to order a convicted sex offender to serve his sentence at the adult diagnostic and treatment center in Avenel where he will receive intensive psychological treatment and therapy, rather than to be placed in the general prison population, if a psychological "examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior" of a criminal nature. N.J.S.A. 2C:47-3a.
The issue in this case is whether a single act of fellatio committed by a 28-year-old defendant upon a 15-year-old boy and subsequent fantasies about the boy by defendant constitutes a "pattern of repetitive, compulsive behavior" of a criminal nature? We hold it does. The statute does not define "repetitive, compulsive behavior" and no case has ever addressed the issue.
Defendant asserts that a single criminal sexual act as a matter of law cannot constitute "repetitive, compulsive behavior," no matter what thoughts or fantasies he had thereafter. He submits that there must be, at the very least, a second criminal sexual act, albeit not necessarily a conviction, before his conduct may be described as repetitive. Moreover, he contends that since he successfully resisted the subsequent fantasies and did not have further criminal sexual contact, his sexual proclivities, whatever they may be, cannot be described as compulsive.
The State argues that the purpose of the act is not only to provide treatment for convicted sex offenders but, equally important, to protect society from further criminal sexual assaults *82 when the offender is released. It asserts that a single criminal sexual act and subsequent sexual fantasies can constitute evidence of repetitive, compulsive behavior of a criminal nature which may require specialized medical treatment before the offender can safely return to live in the community and that this is such a case.
The Sex Offender Act was adopted in 1950 following a detailed report submitted by a legislative commission, "The Habitual Sex Offender: Report and Recommendations of the [New Jersey] Commission on the Habitual Sex Offender," (February 1, 1950) which recognized that there will be "a very serious hazard either from a legal or medical point of view" in establishing who shall be subject to the act because we are dealing with persons whose "emotions are abnormally strong or ... volitional capabilities are subnormally weak," id. at ch. 5, par. 2, but concluded that given "the threat to public security" from persons who have "demonstrated some sexual psychopathy" and "the possibility that methods of effective treatment for them may be worked out" it is far better to treat such persons as a clinical problem rather than warehouse them as a correctional problem. Id. at ch. 4, par. 8.
There are several reasons why a sex offender would prefer to be committed to the general prison population rather than go to Avenel. First, in the view of some there is a greater stigma if one is committed to Avenel as a sex offender, rather than being placed in the general prison population. Moreover, criminals in the general prison population can compute with greater certainty their parole date which more probably will be at an earlier date than if committed to Avenel. If committed to the general prison population parole eligibility is about one-third of the maximum sentence. See N.J.S.A. 30:4-123.51 and N.J.A.C. 10A:71-3.2(c)2. However, if committed to Avenel, parole will not be granted until:
it shall appear to the satisfaction of the State Parole Board, after recommendation by a Special Classification Review Board appointed by the Commissioner *83 that such person is capable of making an acceptable social adjustment in the community. N.J.S.A. 2C:47-5.
And, of course, that determination will depend upon the success of the treatment process and the efforts of the patient himself. See State v. Howard, 110 N.J. 113, 125 (1988) (requiring that when a sex offender enters a plea of guilty he must be informed that he may have to serve his sentence at Avenel where the "period of parole eligibility [is] radically different from that accorded State Prison inmates").
At a hearing to determine if defendant's conduct fell within the purview of the Sex Offender Act, Richard A. Biagioli, principal clinical psychologist at Avenel, opined that defendant's conduct did and Lawrence N. Houston, a private psychologist licensed in New Jersey for over 20 years, opined it did not.
Defendant admitted to performing a single act of fellatio upon a 15-year-old boy, but contended that he was seduced by the boy. Defendant asserted that he was not sexually excited at the time of the offense and did not then realize that what he did was a crime, but he does now. During evaluations he admitted to the State's psychologist that he had at least two subsequent sexual fantasies about the boy. Once while the boy was taking a shower he asked defendant to adjust the water temperature and when he did, he noticed that the boy "had an erection." Defendant admitted that he had an impulse to have contact with the boy, but he was able to resist the urge. The second event occurred when the boy stood nude in a bathroom window making obscene gestures to defendant who stood outside. Defendant again had an impulse to go and have contact with the boy but again resisted the urge. Defendant's psychologist did not question defendant about subsequent fantasies.
It would be helpful to an understanding of the issue in this case to recognize several important factors. While a hearing pursuant to the Sex Offender Act is held within the context of a criminal case, it has many of the attributes of a civil trial. First, the decision is rendered by a court, and not a *84 jury. Second, although a finding of repetitive, compulsive behavior "inflicts a greater stigma than that resulting from the conviction for a sex offense," State v. Howard, supra at 129, the burden of proof imposed upon the State is by only a preponderance of the evidence. Id. at 131. Third, in a sex offender hearing there is no presumption of innocence because defendant has already been convicted as a sex offender and he is not entitled to freedom. The court is simply required to choose "only between commitment at one state correctional facility or another." Ibid. Finally, the rehabilitative procedures at Avenel are not solely for the benefit of defendant and "the state has a substantial interest in treating a repetitive sex offender," so that when he is released from imprisonment he will not pose a further threat to society. Id. at 130. And since the victims of sex offenders are frequently children, it can be fairly argued that if a court errs, it is far better that it be in favor of treatment.
N.J.S.A. 1:1-1 provides that words and phrases in a statute shall "be given their generally accepted meaning" unless otherwise expressly indicated by the Legislature. And to explicate the "ordinary and well-understood meaning" of words, courts may resort to a dictionary. Service Armament Co. v. Hyland, 70 N.J. 550, 556-557 (1976). Webster's Third New International Dictionary (1976) defines repetitive and compulsive as follows:

Repetitive: "the act of instance of repeating something that one has already said or done." [at 1924-1925]

Compulsive: "having to do with, caused by, or suggestive of psychological compulsion or obsession." [at 468]
Obviously, "repetitive" is the act of repeating or doing something again. But what is it that must be repeated? Must it be the very same conduct, i.e., another physical act? What was the intent of the Legislature? The statute reveals a clear legislative purpose to provide sex offenders upon their release from incarceration with the capability "of making an acceptable social adjustment in the community." N.J.S.A. 2C:47-5. And *85 the best way to accomplish this is to provide them with treatment during their incarceration. A significant purpose of the statute is to protect the community and if a psychological evaluation reveals that a person could be a potential danger to himself and others upon his return to the community, then he should be treated at Avenel and not simply placed in the general prison population. Since we are only choosing "between commitment at one state correctional facility or another," id. 110 N.J. at 131, if we err we should err in favor of treatment.
In State v. Howard, supra at 119, defendant's psychologist described defendant's conduct as "an isolated incident and not evidence of any compulsive behavioral trend." We understand this to mean that, like here, defendant committed only a single, criminal sexual act. Yet, his sentence to Avenel was remanded to the trial court only because he was not informed at the time he pled guilty of the consequences of an Avenel sentence. Both the Appellate Division, and the Supreme Court obviously concluded that this was sufficient to hold that defendant fell within the purview of the Sex Offender Act. State v. Howard, 213 N.J. Super. 587 (App.Div. 1986), rev'd and remanded on other grounds 110 N.J. 113 (1988).
We are satisfied that the intent of the Legislature was not limited to repetitive physical sexual acts, but includes psychological conduct such as sexual fantasies. It is reasonable to conclude that once a person has committed a criminal sexual act it was the intent of the Legislature to provide such offender with treatment if there were credible testimony from professional mental health experts that defendant, without treatment, could pose, upon his release, a potential threat to the community. For these reasons we are satisfied that the Legislature intended that repetitive conduct was intended to include both physical and psychological conduct.
"Compulsive behavior" by definition need not be of a physical nature and includes urges of a psychological nature, *86 i.e., arising through the mind. Although defendant did resist fantasies in the past, this does not mean that he will always be able to do so. We should not create potential dangers to society just so that a sex offender can be paroled at an earlier date. When, as here, a person admits at least three criminal sexual thoughts within a relatively brief period of time, one of which results in a sexual criminal offense, it can be indicative of compulsive behavior, even though he successfully resisted the urges on all other occasions.
The issue is not whether "defendant is mentally ill and a danger to others," id. at 131, but whether he needs treatment before he will be "capable of making an acceptable social adjustment in the community." N.J.S.A. 2C:47-5. And while we agree that a single criminal sexual act standing alone is not sufficient to sustain a finding that a person has exhibited "repetitive, compulsive behavior" of a criminal nature, see Commonwealth v. Jarvis, 2 Mass. App. 8, 307 N.E.2d 844, 845 (1974), we hold, nevertheless, that when there is evidence of subsequent sexual fantasies they could constitute, as they do here, evidence justifying the necessity for treatment at Avenel.
We find the testimony of the State's psychologist to be the more credible and are satisfied that the State has proven by a preponderance of the evidence that defendant's conduct falls within the purview of the Sex Offender's Act.