886 A.2d 186

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. N.G., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 10, 2005—Decided November 28, 2005.

Before Judges CONLEY [1], WEISSBARD and WINKELSTEIN.

*Garces & Grabler,* attorneys for appellant (Christopher G. Hewitt and *John D. Caruso,* on the brief).

*Peter C. Harvey,* Attorney General, attorney for respondent (*Adrienne B. Reim,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

WINKELSTEIN, J.A.D.

Defendant, N.G., appeals from his eight-year sentence to the Adult Diagnostic and Treatment Center (ADTC). To sentence a defendant to the ADTC, a judge must find that the defendant's offending conduct was characterized by a pattern of repetitive, compulsive behavior. *See N.J.S.A.* 2C:47–1 to –10 (the Act). On appeal, defendant's primary argument is that the Act is unconstitutionally vague for failing to provide a legal definition of repetitive and compulsive behavior. Alternatively, he argues that even if the Act is not unconstitutionally vague, the State failed to establish that his conduct can be so characterized. We are not persuaded by either argument. Consequently, we affirm.

This is what happened. On February 2, 2004, defendant, then forty-eight years old, pleaded guilty to one count of first-degree aggravated sexual assault (count one) and one count of second-degree sexual assault (count five). The factual basis for his plea was: on one or more dates between December 8, 1991, and

---

[1] Judge Conley, not originally assigned to hear this case, has joined in its consideration and in this opinion.

December 8, 1997, he committed one or more acts of sexual penetration upon his niece, Y.B., who was less than thirteen years old at the time, by inserting his finger into her vagina; and, between May 1, 1992 and December 31, 1995, he touched the buttocks of another niece, C.B., who was also less than thirteen years old. Defendant admitted he acted for purposes of his own sexual gratification. His plea was in exchange for a term of ten years on count one and a concurrent five year term on count five. Pursuant to that plea, count two, second-degree sexual assault; count three, third-degree endangering the welfare of a child; and count four, first-degree aggravated sexual assault, were dismissed.

Thereafter, defendant moved to vacate his plea because he had not been advised that he could potentially face civil commitment at the end of his prison sentence under the Sexually Violent Predator Act (SVPA), *N.J.S.A.* 30:4–27.24 to –27.38. *See State v. Bellamy,* 178 *N.J.* 127, 140, 835 *A.*2d 1231 (2003) (failure to inform a defendant that guilty plea to a predicate offense under SVPA could expose him to civil commitment at the expiration of his prison term is grounds for withdrawal of guilty plea). Ultimately, in exchange for defendant's agreement to withdraw his motion to vacate his plea, the State agreed to an eight-year term, to be served at the ADTC if the court determined that defendant's criminal conduct was repetitive and compulsive. To that end, on September 24, 2004 and October 29, 2004, Judge Heimlich conducted a *Horne*[2] hearing, where the following facts were elicited.

The State's expert was Dr. Kenneth McNiel, a clinical psychologist employed as a consultant at the ADTC. He had prepared over a thousand reports to determine whether a person was a repetitive and compulsive sex offender; he also served as an expert witness in that regard approximately thirty times.

Dr. McNiel interviewed defendant and administered tests to him. Dr. McNiel explained that while no test exists to determine if an individual's sexual behavior is repetitive and compulsive, the

[2] *State v. Horne,* 56 *N.J.* 372, 267 *A.*2d 1 (1970).

health care professionals at the ADTC use the common English language definitions; "repetitive" meaning "something that happens more than once," and "compulsive" meaning "an irresistible urge to perform some irrational behavior."

During Dr. McNiel's interview, defendant admitted he touched Y.B.'s vagina two or three times during the course of one evening. He ascribed his actions to alcohol intoxication. He denied Y.B.'s claim that he compelled her to perform fellatio upon him, that he fondled her, or made her masturbate him over a period of four years, when she was ages five through nine. He also blamed alcohol for his urge to touch C.B.'s buttocks. He denied, also, her account that he had massaged her buttocks for over the two years when she was ages nine through eleven.

Dr. McNiel concluded that defendant's conduct was "characterized by a repetitive and compulsive pattern of sexual behavior." He opined that defendant was a good candidate for treatment at the ADTC and would be better-off there than in state prison.

The defense presented expert testimony from Dr. Jonathan Mack, a licensed psychologist, who had performed several hundred insanity, competency and diminished capacity evaluations for the public defenders of New Jersey and Philadelphia, as well as for private defense attorneys. Dr. Mack had testified as an expert approximately fifteen times regarding the SVPA and civil commitments.

Dr. Mack also interviewed defendant and administered tests to him. During the interview, defendant admitted that he performed his illegal acts on more than one occasion. Dr. Mack concluded that while defendant's behavior qualified as "repetitive," his behavior was not "compulsive." Dr. Mack defined compulsive behavior as "a[n] irresistible urge that one cannot control." He stated that the DSM defines an "obsessive compulsive issue" as an ongoing problem that has been active in the last six months; he then explained that because defendant had not demonstrated evidence of recurrent pedophilic fantasies, urges, or acts since 1995 or 1997, his behavior was not compulsive.

At the sentencing hearing on November 5, 2004, defense counsel contended that the Act is unconstitutional for two reasons: first, it is vague because it lacks a statutory definition of both "repetitive" and "compulsive," and thereby fails to provide fair notice of the standards that apply to determine an appropriate sentence; second, the Act does not indicate whether the characterization of a defendant as "repetitive and compulsive" refers to the time period in which the crime was committed or the time of sentencing.[3] The trial court rejected both arguments, as do we.

We first address whether, because the Act lacks statutory definitions of "repetitive" and "compulsive," it is unconstitutionally vague. The Act neither defines the terms "repetitive" or "compulsive," nor does it explain the meaning of "a pattern of repetitive, compulsive behavior." *See N.J.S.A.* 2C:47–1 to –10. Pertinent portions of the Act read as follows:

*N.J.S.A.* 2C:47–1. Whenever a person is convicted of the offense of aggravated sexual assault, sexual assault, aggravated criminal sexual contact, ... or an attempt to commit any such crime, the judge shall order the Department of Corrections to complete a psychological examination of the offender.... *The examination shall include a determination of whether the offender's conduct was characterized by a pattern of repetitive, compulsive behavior* and, if it was, a further determination of the offender's amenability to sex offender treatment and willingness to participate in such treatment....

[*N.J.S.A.* 2C:47–1 (emphasis added).]

....

2C:47–3. Disposition. a. *If the report of the examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior* and further reveals that the offender is amenable to sex offender treatment and is willing to participate in such treatment, *the court shall determine whether the offender's conduct was so characterized* and whether the offender is amenable to sex offender treatment and is willing to participate in such treatment and shall record its findings on the judgment of conviction.

b. *If the court finds that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior* and that the offender is amenable to sex offender treatment and is willing to participate in such treatment, *the court shall, upon the recommendation of the Department of Corrections, sentence the offender to a term*

[3] While defendant did not raise this latter issue in a point heading on appeal, we will address it. *See R.* 2:6–2(a)(1) (table of contents of appellant's brief must contain point headings to be argued).

*of incarceration to be served in the custody of the commissioner at the Adult Diagnostic and Treatment Center for sex offender treatment ....*

[*N.J.S.A.* 2C:47–3 (emphasis added).]

A criminal statute will be deemed unconstitutionally vague and violative of due process if it fails to provide adequate notice and warning of the conduct that could subject an individual to criminal prosecution. *State v. Hoffman,* 149 *N.J.* 564, 581, 695 *A.*2d 236 (1997) (citing *Screws v. United States,* 325 *U.S.* 91, 101–02, 65 *S.Ct.* 1031, 1035, 89 *L.Ed.* 1495, 1503 (1945)). Our Supreme Court has explained:

> [c]lear and comprehensible legislation is a fundamental prerequisite of due process of law, especially where criminal responsibility is involved.... Vague laws deprive citizens of adequate notice of proscribed conduct, and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement.
>
> [*Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 118, 462 *A.*2d 573 (1983).]

Courts examine criminal laws more critically than civil laws for vagueness violations. *State v. Afanador,* 134 *N.J.* 162, 170, 631 *A.*2d 946 (1993).

A law will generally be deemed unconstitutionally vague as violative of due process if individuals of ordinary intelligence " 'must necessarily guess at its meaning and differ as to its application.' " *Town Tobacconist, supra,* 94 *N.J.* at 118, 462 *A.*2d 573 (quoting *Connally v. Gen. Constr. Co.,* 269 *U.S.* 385, 391, 46 *S.Ct.* 126, 127, 70 *L.Ed.* 322, 328 (1926)). When the average person would understand the words used in a statute, and the Legislature provides no explicit indication of special meaning, the terms used in the provision will carry their ordinary, well-understood meanings. *Afanador, supra,* 134 *N.J.* at 171, 631 *A.*2d 946. To ascertain the ordinary meaning of words used in a statute, courts typically look to a dictionary. *See, e.g., State v. Mortimer,* 135 *N.J.* 517, 532–33, 641 *A.*2d 257 (1994), *cert. denied,* 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994); *Serv. Armament Co. v. Hyland,* 70 *N.J.* 550, 556–57, 362 *A.*2d 13 (1976).

The degree of vagueness that is constitutionally permissible, and the relative importance of fair notice, depend in part on the nature of the statute. *Afanador, supra,* 134 *N.J.* at 170, 631

*A.*2d 946 (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates,* 455 *U.S.* 489, 498, 102 *S.Ct.* 1186, 1193, 71 *L.Ed.*2d 362, 371 (1982)). In that regard, while defendants sentenced to the ADTC may face different parole consequences [4], the liberty interest in an ADTC sentence is weak because a defendant will not necessarily serve a longer term at the ADTC, and prisoners are not guaranteed parole at any particular time. *Howard, supra,* 110 *N.J.* at 121, 129–30, 539 *A.*2d 1203. While an ADTC sentence impacts parole considerations, it "does not enhance the sentence or permit defendant's confinement in custody to be longer than the maximum sentence otherwise authorized by statute for the offense of which defendant was found guilty." *State v. Luckey,* 366 *N.J.Super.* 79, 91, 95, 840 *A.*2d 862 (App.Div.2004). Nevertheless, because actual time served under an indeterminate sentence may exceed that under a flat sentence, we give "due consideration" to the gravity of the sanction in assessing whether the statute survives defendant's vagueness challenge. *See Afanador, supra,* 134 *N.J.* at 170, 631 *A.*2d 946.

■ In the challenged enactment, the Legislature did not explicitly attach any special meaning to the terms repetitive or compulsive. *N.J.S.A.* 2C:47–1 to –10. That being so, given that the terms are words of common understanding to the average person, we conclude they should be given their ordinary and well-understood meanings. *Afanador, supra,* 134 *N.J.* at 171, 631 *A.*2d 946. That meaning can be found in the dictionary. *Webster's II New Riverside Dictionary* 996–97 (1994) defines "repetitive" as "repetitious," with the base word "repeat" meaning "to do, experience, or produce again." The term "compulsive," is defined as "caused by obsession or compulsion," with "compulsion" meaning

---

[4] The flat parole eligibility term is ordinarily one-third of the term of imprisonment for a State prison sentence. *N.J.S.A.* 30:4–123.51; *State v. Howard,* 110 *N.J.* 113, 121, 539 *A.*2d 1203 (1988). In contrast, parole eligibility for an ADTC sentence is indeterminate; it is left to the discretion of the parole board and special classification review board. *Howard, supra, ibid.; N.J.S.A.* 30:4–123.51e; *N.J.S.A.* 2C:47–5.

"an irresistible impulse to act irrationally." *Id.* at 292. Because these definitions are not abstract and may be understood by a citizen of average intelligence, the statute is not unconstitutionally vague. *Compare Mortimer, supra,* 135 *N.J.* at 532–33, 641 *A.2d* 257 (finding statute vague because definitions of words used in statute—"ill will," "hatred," and "bias"—were themselves abstract).

A similar conclusion was reached by the Law Division in *State v. Hass,* 237 *N.J.Super.* 79, 566 *A.2d* 1181 (Law Div.1988). The court employed definitions in *Webster's Third New International Dictionary* (1976), finding "repetitive" as "the act of instance of repeating something that one has already said or done," and "compulsive" as "having to do with, caused by, or suggestive of psychological compulsion or obsession." *Id.* at 84, 566 *A.2d* 1181. The judge then applied these common dictionary definitions and found no constitutional infirmity. *Id.* at 84–86, 566 *A.2d* 1181.

Additional support for the conclusion that the words' ordinary and well-understood meanings provide adequate notice and warning of the conduct that could subject an offender to a sentence to the ADTC is evidenced by the experts' testimony at the *Horne* hearing. They applied substantially the same definition of "repetitive" and attached a similar meaning to the word "compulsive." Dr. McNiel explained that he and other professionals at the ADTC use the common English language definitions of repetitive and compulsive: "repetitive is something that happens more than once, which could be multiple incidents with one victim, or multiple victims, or multiple cases over time"; and, compulsive means "an irresistible urge to perform some irrational behavior." Dr. Mack considered defendant's acts to be repetitive because defendant "did acts more than once to his own admission, which would be repetitive." As to whether defendant's actions were compulsive, Dr. Mack "looked for evidence of compulsive behavior as defined by a[n] irresistible urge that one cannot control." Thus, both experts substantially used the common definitions of the terms to analyze defendant's conduct.

In sum then, the terms "repetitive" and "compulsive" are common words with meanings that may be well-understood by persons of ordinary intelligence. As such, they provide fair notice to individuals, such as defendant, as to when a court may sentence a defendant to the ADTC, and they consequently do not render the Act unconstitutionally vague.

Next, we direct our attention to defendant's second argument; that the Act is unconstitutional because it does not indicate whether the characterization of a defendant as repetitive and compulsive refers to the time period in which the criminal conduct was committed or when the defendant is sentenced. We consider this argument to be one of statutory construction rather than of vagueness.

When a statute is not clear on its face, courts must ascertain legislative intent. *State v. Simon*, 161 *N.J.* 416, 455, 737 *A.*2d 1 (1999). The ADTC sentence has both a penal and rehabilitative component. *State v. Chapman*, 95 *N.J.* 582, 589–90, 592, 472 *A.*2d 559 (1984). The legislative purpose of sentencing a defendant to the ADTC is both to punish him for his wrongdoing and to treat his underlying psychological problems. *Id.* at 592, 472 *A.*2d 559. Rehabilitative treatment is not only for the defendant's benefit, but also for the benefit of society—"[t]he victims of sex offenses are often the most precious and vulnerable members of society, children." *Howard, supra,* 110 *N.J.* at 130, 539 *A.*2d 1203.

It follows then, that if an individual's conduct at the time he is sentenced is no longer characterized by a pattern of repetitive, compulsive behavior, he would not benefit from rehabilitation and consequently would not require treatment. That being so, the purposes of the Act would not be fostered by sentencing him to the ADTC. In other words, to decide whether an offender's conduct is characterized by a pattern of repetitive, compulsive behavior so as to warrant ADTC treatment, a court must consider the offender's condition at sentencing, not merely his behavior on the dates that the criminal conduct in question occurred.

 Given this construction of the Act, we consider here whether defendant's conduct was characterized by a pattern of repetitive, compulsive behavior at the time the court found defendant qualified for confinement at the ADTC. Whether the offender's conduct was characterized by a pattern of repetitive and compulsive behavior must be proved by a preponderance of the evidence. *Howard, supra,* 110 *N.J.* at 131, 539 *A.*2d 1203. We conclude that it was.

First, both experts agreed that defendant's actions were repetitive. He admitted to molesting Y.B. on multiple occasions, and C.B. once. This conduct qualifies as repetitive given the word's ordinary, well-understood meaning. The trial court's finding, therefore, that defendant's conduct was repetitive, is beyond debate.

Next, we address whether his conduct was compulsive. While Dr. Mack agreed with Dr. McNiel that defendant's conduct was repetitive, he did not consider it to be compulsive for two reasons. First, he relied on the definition of "obsessive compulsive" in the DSM IV—an issue that has been an active, ongoing problem in the last six months. Dr. Mack concluded that defendant's behavior did not meet this definition because he had not had any recurrent urges or pedophilic fantasies since 1995 or 1997. Second, Dr. Mack found that defendant's illegal conduct only occurred when he was under the influence of alcohol; the doctor accepted defendant's claim that he did not have his urges when he was not drinking. That, according to Dr. Mack, meant that defendant's conduct was not compulsive.

Dr. McNiel disagreed. First, he concluded that defendant's conduct was compulsive because he knew that his behavior was wrong at the time he committed the acts, but he nonetheless continued his behavior. And significantly, Dr. McNiel concluded that while defendant had not acted out for several years, his pedophilia was simply in remission, and his compulsion could again manifest itself. Dr. McNiel also testified that while alcohol may

have been a contributing factor to defendant's conduct, it did not cause his behavior.

The trial judge accepted Dr. McNiel's testimony. He found that even though defendant committed no sexual offenses since 1997, he nonetheless remained suitable for treatment at the ADTC because he remained at risk to commit another offense. The judge cited Dr. McNiel's finding that defendant likely has pedophilia in remission, and that he may not have committed sexual offenses in recent years because his access to his nieces ended. Notably, the court also relied upon Dr. Mack's testimony that defendant could again offend while under the influence of alcohol, as well as Dr. Mack's concession on cross-examination that alcohol lowers inhibitions, but does not actually create an impulse. We give deference to the findings of the trial judge where, as here, his findings were supported by the record. *State v. Locurto*, 157 *N.J.* 463, 471, 724 *A.*2d 234 (1999).

We are mindful that Dr. McNiel based his conclusions, in part, on what was related to him by the victims, who did not testify at the *Horne* hearing. They described defendant's criminal conduct as being much more extensive than did defendant. Nevertheless, notwithstanding what the victims said, defendant's own account of his illegal sexual offenses was sufficient to establish a pattern of repetitive, compulsive behavior.

When he entered his guilty plea in February 2004, he testified that "on one or more dates" between December 1991 and December 1997 he committed "one or more acts of sexual penetration" on his niece, Y.B., who during that time frame was between five and ten years old. Further, he admitted that "on one or more occasions on various dates between May 1, 1992 and December 31, 1995," he committed "one or more acts of sexual conduct upon C.B.," who at the time was between nine and twelve years old. He testified he committed these offenses for purposes of his own sexual gratification.

Defendant told Dr. McNiel that while he was touching Y.B.'s vaginal area, he realized his actions were wrong, but touched her again, two or three times, that same night. During his interview with Dr. Mack, defendant admitted that he touched Y.B. on more than one occasion, and touched C.B. on a different date.

Dr. Mack testified that defendant could again commit a sexual offense if he becomes intoxicated. And significantly, Dr. McNiel testified that his opinion would not change if it were based solely on defendant's account because defendant told him that he knew his behavior was wrong the first time he did it, but he nevertheless continued his criminal conduct. Thus, defendant's conduct here, by either his own account or that of the victims, was repetitive and compulsive.

At the time of sentencing, the trial court found that defendant expressed a then present willingness to participate in therapy to get help. The judge considered defendant's condition as it existed on that date, not just his behavior on the dates on which the incidents of abuse occurred, to find that a sentence to the ADTC was warranted. Judge Heimlich's decision is well supported by the record.

Affirmed.