**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0816-15T1

IN THE MATTER OF REGISTRANT
D.F.S.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **July 1, 2016** |
| **APPELLATE DIVISION** |

Argued May 24, 2016 – Decided July 1, 2016

Before Judges Reisner, Hoffman and Leone.

On appeal from the Superior Court of New
Jersey, Law Division, Hudson County,
Indictment No. 05-11-02091.

Michael C. Woyce argued the cause for
appellant D.F.S. (Murphy & Woyce, attorneys;
Mr. Woyce, on the brief).

Eric P. Knowles, Assistant Prosecutor,
argued the cause for respondent State of New
Jersey (Esther Suarez, Hudson County
Prosecutor, attorney; Erin M. Campbell,
Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Registrant D.F.S. appeals from an August 28, 2015 order, resulting from a Megan's Law tier hearing. Following the hearing, the judge (Megan's Law judge or trial judge) directed that D.F.S.'s individual registration record be included on the sex offender Internet registry, pursuant to N.J.S.A. 2C:7-13(e), because at the time D.F.S. was sentenced for his predicate

crime, the sentencing judge found that his sexually offending conduct was repetitive and compulsive.[1]  See N.J.S.A. 2C:47-3.

The pertinent provision states:

> Notwithstanding the provisions of paragraph d. of this subsection [including an exception for incest offenders whose risk of re-offense is moderate], the individual registration record of an offender to whom an exception enumerated in paragraph (1), (2) or (3) of subsection d. of this section applies shall be made available to the public on the Internet registry if the offender's conduct was characterized by a pattern of repetitive, compulsive behavior, or the State establishes by clear and convincing evidence that, given the particular facts and circumstances of the offense and the characteristics and propensities of the offender, the risk to the general public posed by the offender is substantially similar to that posed by offenders whose risk of re-offense is moderate and who do not qualify under the enumerated exceptions.
>
> [N.J.S.A. 2C:7-13(e) (emphasis added)].

We conclude that the trial judge correctly interpreted the statute, because N.J.S.A. 2C:7-13(e) requires that the information of a moderate or low risk sex offender appear on the

_____

[1] The Megan's Law judge also placed defendant in Tier 2 (moderate risk), but only the Internet notification is at issue on this appeal.  The Megan's Law judge stayed the Internet notification pending appeal.  The stay is hereby vacated, effective forty-five days from the date of this opinion.  That schedule is intended to permit an orderly, non-emergent process should D.F.S. intend to pursue a further appeal and seek a further stay.

A-0816-15T1

registry "if the offender's conduct <u>was characterized</u> by a pattern of repetitive, compulsive behavior." (emphasis added). We conclude that the decision whether such an offender's individual registration record "shall be made available to the public on the Internet registry" depends on the nature of his sexual offenses at the time he committed them, and not on his mental condition at the time of the tier hearing. Accordingly, we affirm the order on appeal.

I

In 2006, D.F.S. pled guilty to first-degree aggravated sexual assault, <u>N.J.S.A.</u> 2C:14-2(a)(1), for sexually molesting his step-daughter. According to statements D.F.S. made to the psychologist who interviewed him prior to sentencing, D.F.S. began molesting the child when she was between the ages of twelve and fourteen, and engaged in an escalating series of sexual crimes against the victim, including digital penetration and performing oral sex on her.[2] The psychologist concluded that, for purposes of classification under <u>N.J.S.A.</u> 2C:47-3, D.F.S. had engaged in "a pattern of sex offending behavior

---

[2] D.F.S. did not provide us with the transcript of his plea hearing or the plea form. Hence, we do not know what facts he admitted as part of his guilty plea. Nor do we know what information he was given about the possible consequences of his guilty plea. He also did not provide us with the transcript of his sentencing hearing.

[that] can be characterized as having been both repetitively and compulsively performed." The sentencing judge imposed a term of ten years in prison, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, to be served at the Adult Diagnostic and Treatment Center (ADTC) for sex offenders. There is no dispute on this record that the sentencing judge adopted the psychologist's finding and determined that D.F.S.'s offenses were repetitive and compulsive.[3] D.F.S. did not appeal from the ADTC sentence.

On March 24, 2015, D.F.S. was released from prison. By virtue of his conviction, he was subject to the registration and notification provisions of Megan's Law, N.J.S.A. 2C:7-1 to -23. He was afforded a hearing to challenge his proposed Tier Two classification, N.J.S.A. 2C:7-8, and to challenge his proposed inclusion on the Internet registry. N.J.S.A. 2C:7-13; see Doe v. Poritz, 142 N.J. 1, 107 (1995) (mandating tier classification hearings); Paul P. v. Verniero, 982 F. Supp. 961, 964 (D.N.J. 1997) (noting the New Jersey Supreme Court's 1997 order mandating that the State prove a registrant's appropriate tier classification by clear and convincing evidence), aff'd, 170

---

[3] At the Megan's Law hearing on August 7, 2015, D.F.S.'s attorney conceded that "we have no issue with the finding at the time of sentencing, at that time he was found repetitive and compulsive."

F.3d 396 (3d Cir. 1999). At his hearing, D.F.S. argued that due to his successful treatment at the ADTC, he was no longer a "repetitive and compulsive" sex offender, and thus his registration information should not be made public on the Internet registry, pursuant to N.J.S.A. 2C:7-13(e).

In a written opinion dated August 28, 2015, the trial judge interpreted the phrase "if the offender's conduct was characterized by a pattern of repetitive, compulsive behavior," as evincing a legislative focus on the time when the offense was committed. N.J.S.A. 2C:7-13(e). Therefore, the judge placed no weight on a defense expert report opining that, at present, D.F.S. is no longer "repetitive and compulsive." Because the sentencing court had determined that D.F.S.'s sexually offending conduct was repetitive and compulsive, the Megan's Law judge held that N.J.S.A. 2C:7-13(e) required that his registration information be placed on the Internet registry.

II

In his appellate brief, D.F.S. raises the following points of argument:

> POINT I: PLACEMENT ON THE INTERNET REGISTRY AS A RESULT OF A FINDING THAT [D.F.S.] WAS REPETITIVE AND COMPULSIVE AT THE TIME OF SENTENCING, WHERE [D.F.S.] WAS NEVER INFORMED OF THIS CONSEQUENCE, VIOLATES THE DOCTRINE OF FUNDAMENTAL FAIRNESS

POINT II: THE TRIAL COURT ERRED BECAUSE IT FAILED TO MAKE A FINDING BY CLEAR AND CONVICING EVIDENCE THAT [D.F.S.] WAS "REPETITIVE AND COMPULSIVE" AT THE TIME OF THE TIER HEARING AND INSTEAD RELIED UPON A FINDING BY A LOWER STANDARD MADE AT SENTENCING

POINT III: THE TRIAL COURT ERRED IN HOLDING THAT A FINDING OF "REPETITIVE AND COMPULSIVE" IS A STATIC FACTOR

POINT IV: THE STATUTORY LANGUAGE IS AMBIGUOUS AND THE TRIAL COURT SHOULD HAVE LOOKED TO THE BROADER STATUTORY ENACTMENT OF "MEGAN'S LAW" IN DETERMINING THE MEANING OF THE 2013 AMENDMENTS TO N.J.S.A. 2C:7-13

As discussed later in this opinion, we decline to address several of D.F.S.'s appellate arguments because they were not raised in the trial court, are not supported by an appropriate evidentiary record, or are otherwise not properly presented by this appeal.

However, the interpretation of N.J.S.A. 2C:7-13(e) is both properly before us and central to the appeal. Hence, we begin with that issue.[4] In 2000, the New Jersey Constitution was amended to authorize public dissemination of information about sex offenders:

---

[4] The general history of Megan's Law, and the procedures it requires, have been detailed in other cases, and need not be repeated here. See A.A. v. New Jersey, 341 F.3d 206, 208-09 (3d Cir. 2003); A.A. v. State, 384 N.J. Super. 481, 486-91 (App. Div.), certif. denied, 188 N.J. 346 (2006), cert. denied, 549 U.S. 1181, 127 S. Ct. 1169, 166 L. Ed. 2d 996 (2007).

Notwithstanding any other provision of this Constitution and irrespective of any right or interest in maintaining confidentiality, it shall be lawful for the Legislature to authorize by law the disclosure to the general public of information pertaining to the identity, specific and general whereabouts, physical characteristics and criminal history of persons found to have committed a sex offense. The scope, manner and format of the disclosure of such information shall be determined by or pursuant to the terms of the law authorizing the disclosure.

[N.J. Const. art. IV, § 7, ¶ 12.]

Shortly thereafter, the Legislature passed L. 2001, c. 167, which established the Internet registry for certain sexual offenders. N.J.S.A. 2C:7-12 to -19. The Legislature made the following findings and declarations:

The Legislature finds and declares that the public safety will be enhanced by making information about certain sex offenders contained in the sex offender central registry established pursuant to [N.J.S.A. 2C:7-4] available to the public through the Internet. Knowledge of whether a person is a convicted sex offender at risk of re-offense could be a significant factor in protecting oneself and one's family members, or those in care of a group or community organization, from recidivist acts by the offender. The technology afforded by the Internet would make this information readily accessible to parents and private entities, enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk.

[N.J.S.A. 2C:7-12.]

At that time, the Legislature indicated its policy view that it was not necessary to include incest offenders[5] on the Internet registry, ibid., and accordingly, the statute as originally enacted contained an exception for offenders whose risk of re-offense was moderate and whose sole sex offense was an incest offense. N.J.S.A. 2C:7-13(d)(2).[6]

However in 2013, the Legislature amended the statute to require Internet listing of any offender "whose risk of re-offense is moderate or low and whose conduct was found to be characterized by a pattern of repetitive, compulsive behavior pursuant to the provisions of [N.J.S.A.] 2C:47-3." N.J.S.A. 2C:7-13(b)(2); L. 2013, c. 214, § 2 (eff. July 1, 2014). The amendment also specifically required Internet listing of such offenders "[n]otwithstanding" the exceptions in subsections (d)(1)-(3), including the exception for incest offenders set forth in subsection (d)(2). N.J.S.A. 2C:7-13(e). The amendment

---

[5] In this opinion, we use the terms "incest offenders" and "incest offense" to refer to the offenders and sexual crimes listed in N.J.S.A. 2C:7-13(d)(2).

[6] At the tier hearing, the State did not contest D.F.S.'s assertion that his prior conviction would fall within section 13(d)(2). See In re N.B., 222 N.J. 87, 90 (2015) (holding that an offender who committed multiple acts of sexual contact against a relative, but had only one conviction, fell within the incest exception in N.J.S.A. 2C:7-13(d)(2)). The correctness of that assertion is not before us on this appeal.

therefore eliminated the exception for incest offenders whose sex offenses were found to be repetitive and compulsive.[7]

Despite the amendment's wording, defendant argues that, at the tier hearing, the State must prove that an offender's current conduct is characterized by repetitive and compulsive sexual offending. We cannot agree.

In construing the statute, we follow certain well established principles.

> "The primary goal of statutory interpretation 'is to determine as best [as possible] the intent of the Legislature, and to give effect to that intent.'" "[T]he best indicator of that intent is the plain language chosen by the Legislature." The Legislature has instructed that, when construing "its statutes, 'words and phrases shall be read and construed with their context, and shall, unless inconsistent with

---

[7] We find no merit in defendant's argument that the 2013 amendments must be construed in light of the Legislature's earlier policy statement, in N.J.S.A. 2C:7-12, that some incest offenders should be exempted from inclusion on the Internet registry. The 2013 amendment reflects a change in that policy. In fact the legislative history of the amendment strongly suggests that the Legislature perceived the previous exceptions as creating a loophole which the Legislature intended to close. See Senate Law and Pub. Safety Comm., Statement to S. 2636 (June 6, 2013). After reviewing the current exceptions in the law, the Statement unequivocally expressed the legislative intent: "This bill requires an offender whose conduct was found to be repetitive and compulsive to appear on the Internet registry." Ibid. The Statement then explained that under the amendment, "an offender whose conduct was found to be repetitive and compulsive" will no longer be able to "invok[e] one of the statutory exceptions to keep his registration information from being published on the Internet." Ibid.

the manifest intent of the Legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting N.J.S.A. 1:1-1).

> [N.B., supra, 222 N.J. at 98 (additional citations omitted).]

If a straightforward reading of the statute yields its plain meaning, we need go no further. State v. Shelley, 205 N.J. 320, 323 (2011); DiProspero v. Penn, 183 N.J. 477, 492 (2005).

> "When the Legislature's chosen words lead to one clear and unambiguous result, the interpretative process comes to a close, without the need to consider extrinsic aids." A court "seek[s] out extrinsic evidence, such as legislative history, for assistance when statutory language yields 'more than one plausible interpretation.'" A court may also turn to extrinsic evidence "if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme."
>
> [N.B., supra, 222 N.J. at 98-99 (citations omitted).]

In analyzing N.J.S.A. 2C:7-13, we consider the text of section 13, the sex offender sentencing statute to which it refers, and the statutory scheme (Megan's Law) of which section 13 is a part.

Based upon our reading of its plain wording, we conclude that N.J.S.A. 2C:7-13(e) is not ambiguous. The relevant

provision is phrased in the past tense, applying to registrants "whose conduct <u>was found to be characterized by a pattern of repetitive, compulsive behavior</u>." <u>Ibid.</u> (emphasis added). Moreover, another provision of the same section specifically made clear that Internet listing was required for all offenders "whose conduct was found to be characterized by a pattern of repetitive, compulsive behavior <u>pursuant to the provisions of</u> [<u>N.J.S.A.</u>] 2C:47-3." <u>N.J.S.A.</u> 2C:7-13(b)(2) (emphasis added). We conclude that both provisions describe a static factor, which can be found in the decision made by the sentencing court pursuant to <u>N.J.S.A.</u> 2C:47-3.

Any doubt on that point is resolved by considering the included reference to <u>N.J.S.A.</u> 2C:47-3, which is part of the Sex Offender Act (Act), <u>N.J.S.A.</u> 2C:47-1 to -10. The Act's "central theme" is to "address[] sex offenders" whose conduct is clinically determined to be both repetitive and compulsive. <u>In re Civil Commitment of W.X.C.</u>, 204 <u>N.J.</u> 179, 196 (2010), <u>cert. denied</u>, 562 <u>U.S.</u> 1297, 131 <u>S. Ct.</u> 1702, 179 <u>L. Ed.</u> 2d 635 (2011); <u>see</u> <u>N.J.S.A.</u> 2C:47-1 (sex offenders convicted of one of the listed offenses must be clinically examined to determine if their "conduct was characterized by a pattern of repetitive, compulsive behavior," and if so, whether they are amenable to sex offender treatment and willing to participate in it).

N.J.S.A. 2C:47-3 sets forth the criteria the sentencing court is to use in determining whether to sentence a convicted sex offender to the ADTC. Subsections 3(a) and 3(b) provide that "[i]f the report of the [clinical] examination reveals that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior" and "[i]f the court finds that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior," then an ADTC sentence is appropriate so long as the offender is also amenable to treatment and willing to engage in it. N.J.S.A. 2C:47-3(a), (b) (emphasis added).

The 2013 amendment to N.J.S.A. 2C:7-13 rewrote subsection 13(b) entirely to include the previously-quoted language, including the reference to N.J.S.A. 2C:47-3. That reference signals that for purposes of section 13, the terms "repetitive" and "compulsive" are to be based on findings made under N.J.S.A. 2C:47-3. Nothing in the wording or history of the amendment suggests that the terms "repetitive" and "compulsive" in subsection 13(e) should be interpreted differently than the same phrase in subsection 13(b). Thus, the Legislature intended the Internet registration decision to be based on the findings originally made at the time of sentencing pursuant to N.J.S.A. 2C:47-3.

Additional wording found in N.J.S.A. 2C:7-13(e) also supports our conclusion. The section provides that Internet listing is required if the offender's conduct was found to be repetitive and compulsive, "or [if] the State establishes by clear and convincing evidence" that the offender poses a current risk by proving

> that, given the particular facts and circumstances of the offense and the characteristics and propensities of the offender, the risk to the general public posed by the offender is substantially similar to that posed by offenders whose risk of re-offense is moderate and who do not qualify under the enumerated exceptions.
>
> [N.J.S.A. 2C:7-13(e).]

Thus, subsection 13(e) sets forth, in the alternative, two bases for Internet listing: a static criterion consisting of a past finding of repetitive and compulsive conduct; or evidence proving that the offender poses a current risk of re-offense even though his past sexual offenses would not otherwise require Internet listing.

The broader statutory framework of which N.J.S.A. 2C:7-13 is a part further supports our conclusion. The Legislature's concern with offenders whose conduct was characterized by repetitive, compulsive behavior is reflected throughout Megan's

Law.[8]  N.J.S.A. 2C:7-2(b)(1), which addresses the registration of sex offenders, states that the sex offenses subject to the registration provisions include

> [a]ggravated sexual assault, sexual assault, aggravated criminal sexual contact, kidnapping pursuant to [N.J.S.A. 2C:13-1(c)(2)] or an attempt to commit any of these crimes if the court found that the offender's conduct was characterized by a pattern of repetitive, compulsive behavior, regardless of the date of the commission of the offense or the date of conviction.

Hence, Megan's Law applies retroactively to repetitive, compulsive offenders. The conduct referred to in the above quoted language is the conduct exhibited in committing the offense.

Further, offenders who are required to register under N.J.S.A. 2C:7-2(b)(1) must "verify [their] address with the appropriate law enforcement agency every 90 days," whereas other

---

[8]  In Doe v. Poritz, the Court described the challenge the Legislature faced in designing Megan's Law: "The recidivism of a repetitive and compulsive sex offender is almost intractable. The problem of this form of recidivism poses an enormous challenge to the Legislature to devise a solution generally designed to remedy the problem without unnecessarily penalizing those who are its source." Doe v. Poritz, supra, 142 N.J. at 40; see also id. at 14-20. The Court noted that offenders whose conduct was repetitive and compulsive are "those most likely, even many years later, to reoffend." Id. at 74. In W.X.C., the Court again acknowledged the Legislature's concern for the particular danger posed by offenders whose sex crimes were repetitive and compulsive. W.X.C., supra, 204 N.J. at 196-97.

convicted offenders must verify their addresses annually. N.J.S.A. 2C:7-2(e). Thus, the Legislature placed stricter registration requirements on offenders whose crimes, when committed, were characterized by repetitive and compulsive behavior.

N.J.S.A. 2C:7-8, which sets forth the procedures for notification based on the risk of re-offense, states that "[c]riminal history factors indicative of high risk of re-offense" include "[w]hether the offender's conduct was found to be characterized by repetitive and compulsive behavior." N.J.S.A. 2C:7-8(b)(3)(a). By contrast, a separate subsection lists as another risk factor the offender's "[r]ecent behavior." N.J.S.A. 2C:7-8(b)(7). The plain language of subsection 8(b)(3)(a), as well as the contrast with subsection 8(b)(7), illustrates that "repetitive and compulsive" refers to an offender's past conduct.

Nearly identical language to that used in N.J.S.A. 2C:7-2(b)(1) and N.J.S.A. 2C:7-8(b)(3)(a) appears in the Internet registry sections, N.J.S.A. 2C:7-13(b)(2) and -13(e). Generally, "a word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary." Perez v. Pantasote, Inc., 95 N.J. 105, 116 (1984). Reading Megan's Law as a whole, it is apparent to us

that the phrase used in N.J.S.A. 2C:7-13(e) - "was characterized by a pattern of repetitive, compulsive behavior" - refers to the determination that was made at sentencing.

Defendant's reliance on State v. N.G., 381 N.J. Super. 352 (App. Div. 2005), is misplaced. The decision addresses how the sentencing court is to decide whether to sentence an offender to the ADTC. In that case, the defendant appealed his ADTC sentence, claiming that the phrase "repetitive, compulsive behavior," as used in N.J.S.A. 2C:47-3, was unconstitutionally vague, and in the alternative, that the State failed to prove that his conduct met those criteria. Id. at 356. The defendant was accused of molesting his nieces between 1991 and 1997. However, he was not sentenced until 2004.

At his Horne[9] hearing, the State's psychologist testified that the defendant's conduct was both repetitive and compulsive. The defendant's expert opined that although the defendant's conduct was repetitive, it was not compulsive, in the sense that it was not the product of an irresistible urge that the defendant could not control. The defense expert opined that a finding of compulsion required an ongoing problem that had "been active in the last six months" and because the defendant "had

---

[9] State v. Horne, 56 N.J. 372, 378-79 (1970), entitles a convicted sex offender to a hearing before the court decides whether to impose an ADTC sentence.

not demonstrated evidence of recurrent pedophilic fantasies, urges, or acts since 1995 or 1997, his behavior was not compulsive." Id. at 358.

This court found that the terms "repetitive" and "compulsive" were not vague, and noted that both sides' experts ascribed essentially the same meanings to those terms. However, the court looked at the purpose of an ADTC sentence, which was not only to punish the offender but also "to treat [defendant's] underlying psychological problems." Id. at 363. The court reasoned:

> It follows then, that if an individual's conduct at the time he is sentenced is no longer characterized by a pattern of repetitive, compulsive behavior, he would not benefit from rehabilitation and consequently would not require treatment. That being so, the purposes of the Act would not be fostered by sentencing him to the ADTC. In other words, to decide whether an offender's conduct is characterized by a pattern of repetitive, compulsive behavior so as to warrant ADTC treatment, a court must consider the offender's condition at sentencing, not merely his behavior on the dates that the criminal conduct in question occurred.
>
> [Ibid.]

The Panel found that the trial court reasonably credited the State's expert's testimony that the defendant likely suffered from "pedophilia in remission;" he "remained at risk to commit another offense," particularly if he used alcohol; and his lack

A-0816-15T1

of recent offenses may have been due to lack of opportunity rather than recovery. Id. at 365.

Since N.G. was decided, the Supreme Court decided W.X.C., which suggests a slightly different analysis to support the result reached in N.G. In W.X.C., the Court observed that the Legislature had repeatedly narrowed the ADTC sentencing statute, to conserve the State's limited resources for the treatment of incarcerated sex offenders. W.X.C., supra, 204 N.J. at 196-97, 199. The Court observed that, currently, in order to impose an ADTC sentence under N.J.S.A. 2C:47-3, a finding of past repetitive and compulsive conduct is not enough. Rather, the sentencing court must find four factors: "[F]our qualifications must coalesce for a Sex Offender Act sentence: repetitiveness; compulsiveness; amenability; and willingness to participate in treatment." Id. at 197. Had W.X.C. been decided at the time, perhaps the court in N.G. would have reasoned that an offender who has brought his sexual compulsions under control prior to the date of sentencing would not be "amenable" to treatment at ADTC, in the sense that he would no longer benefit from that treatment, and hence should not be sentenced there.

However, for purposes of this case, we need not decide whether N.G. should have focused on whether the defendant was "amenable" to treatment at the time of sentencing, rather than

on whether he was a "repetitive and compulsive" offender at that point in time. Suffice to say that, under the holding of N.G., the determination as to whether a convicted sex offender's conduct "was" repetitive and compulsive is made <u>at the time of</u> <u>sentencing</u>. That is also the point in time which is relevant for purposes of the Internet registry statute, <u>N.J.S.A.</u> 2C:7-13(e).

N.G. has no further relevance to our analysis because, rather than addressing the placement of a sex offender's information on the Internet registry, it addressed the most appropriate use of the State's very limited therapeutic resources for treating incarcerated sex offenders. Those concerns about limitations on therapeutic resources have no application to the placement of a sex offender's registration information on the Internet registry. Unlike the ADTC sentencing process, the purpose of the registry is not to rehabilitate sex offenders but solely to protect the public. See <u>N.J.S.A.</u> 2C:7-1; <u>N.J.S.A.</u> 2C:7-12.

Accordingly, we affirm the trial court's order requiring that D.F.S.'s registration information be placed on the Internet registry, pursuant to <u>N.J.S.A.</u> 2C:7-13(e), because at the time D.F.S. was sentenced the court found that his offenses were repetitive and compulsive.

Defendant's additional appellate issues are not properly before us on this appeal.[10] D.F.S. argues that he was not informed, at his sentencing, of the possible Megan's Law-related consequences of a finding that his conduct was repetitive and compulsive. That issue was not raised before the Megan's Law judge; and in any event, an application to revise D.F.S.'s previous classification at the time of sentencing, or to withdraw his guilty plea, must be filed as a post-conviction application in his criminal case.

As previously noted, at the Megan's Law hearing, D.F.S.'s counsel specifically informed the court that "we have no issue with the finding at the time of sentencing, at that time he was found repetitive and compulsive." D.F.S. did not argue that, had the sentencing court applied the clear and convincing standard of proof, instead of the preponderance of the evidence standard, the "repetitive and compulsive" decision at sentencing would have been different at the time he was sentenced. See State v. Howard, 110 N.J. 113, 131 (1988) (for ADTC sentencing purposes, repetitive and compulsive behavior need only be proven

---

[10] To ascertain with certainty what issues were raised in the Megan's Law hearing, we required the parties to provide us with their trial court briefs. D.F.S. provided us with his brief. The State advised that it did not file a brief in the trial court.

by a preponderance). Consequently, this case does not present an appropriate vehicle for us to decide whether the "repetitive and compulsive" decision must have been made by clear and convincing evidence, in order for the Megan's Law judge to later rely on it for purposes of deciding whether to place an offender's information on the Internet registry. That issue must await another case. See State v. J.M., Jr., __ N.J. __, __ (2016) (slip op. at 21) (disapproving the rendering of advisory opinions).

In the trial court, D.F.S. did not challenge the constitutionality of N.J.S.A. 2C:7-13(e). Nor did he argue that it violated the doctrine of fundamental fairness. He did not, at the trial level, give the Attorney General notice of a constitutional challenge. See R. 4:28-4(a). As a result, the record created is insufficient to permit decision of a constitutional challenge based on a claim that the Internet registry requirement violates due process. Nor does this case present an appropriate vehicle for us to address what we perceive as the implicit premise underlying D.F.S.'s arguments: that an offender whose crimes were repetitive and compulsive can be sufficiently rehabilitated such that, as a matter of constitutional principle, the repetitive and compulsive nature

21

of his past conduct can no longer justify disclosing his personal information on the Internet registry.[11]

Constitutional issues are not afterthoughts to be raised for the first time on appeal without a proper evidentiary record. A hearing in which the opposing party has no notice of the constitutional issue, and hence has no reason to present opposing evidence pertinent to the issue, does not produce a fair or satisfactory record. Consequently, we decline to depart from the usual rule that we will not entertain arguments raised for the first time on appeal. See State v. Robinson, 200 N.J. 1, 20 (2009); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1, 7-8, 123 S. Ct. 1160, 1164-65, 155 L. Ed. 2d 98, 105 (2003) (rejecting procedural due process claim, but declining to address substantive due process claim relating to Connecticut's

---

[11] We note that several constitutional challenges to Megan's Law Internet registration provisions have already been rejected. See Smith v. Doe, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003) (upholding Alaska's Internet Registry law against ex post facto challenge); A.A. v. New Jersey, supra, 341 F.3d at 213 (holding that "whatever privacy interest the Registrants have in their home addresses is substantially outweighed by [New Jersey's] interest in expanding the reach of its notification [via the Internet Registry] to protect additional members of the public"); A.A. v. State, supra, 384 N.J. Super. at 498-500 (rejecting a federal equal protection challenge to N.J. Const. art. IV, § 7, ¶ 12, and noting that the language of paragraph 12 precluded a challenge based on any other provision of the New Jersey Constitution). However, the record is inadequate for our consideration of this particular constitutional challenge.

Internet registry law, because the appeal did not properly present the issue); cf. State v. Bueso, __ N.J. __, __ (2016) (slip op. at 11-13).

Lastly, D.F.S. argues that the Internet registration statute is overbroad and does not serve the Legislature's underlying purpose of protecting the public against sex offenders who pose a current danger. He contends that the purpose of the tier hearings is to evaluate an offender's current risk to reoffend, and that using one static aspect of an offender's past conduct (whether it was repetitive and compulsive) would, in his words "frustrate[] the purpose of the Internet Registry." Absent a constitutional flaw in the statute, that issue presents a policy decision for the Legislature.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0816-15T1